IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT JOHNSON, as personal representative for the ESTATE OF IRENA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>DENITA COLVIN, WILLIE EVA BALDWIN AND ACE AMERICAN INSURANCE COMPANY,<br><br>Defendants. | CASE NO.: 2:07-cv-1068-MHT-WC |

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
MOTION TO DISMISS AND/OR MOTION FOR MORE DEFINITE STATEMENT**

COMES NOW, the Defendant, ACE AMERICAN INSURANCE COMPANY (hereinafter "ACE"), by and through the undersigned and moves for Dismissal and/or a More Definite Statement of the Second Amended Complaint pursuant to *Federal Rule of Civil Procedure 12*, for the following reasons:

**General Grounds for Motion**

1. Plaintiff claims that the Court has jurisdiction over this case due to diversity of citizenship. As clearly indicated on the Second Amended Complaint, the Plaintiff, Robert Johnson, is bringing suit as the legal representative of his mother, Irene Johnson. At the time of her death, Irene Johnson was a resident of Pennsylvania. The Estate was established in Pennsylvania. As

Plaintiff indicates in Paragraph 4, Defendant ACE is incorporated in Pennsylvania and is thus a legal resident thereof. This claim is due to be dismissed or remanded as there is no diversity of citizenship. *Federal Rule of Civil Procedure 12(b)* holds jurisdiction shall be challenged in the initial pleading.

2. Secondly, *Federal Rule of Civil Procedure 12(e)* indicates that if a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, a party may move for a more definite statement before interposing a responsive pleading.

3. Plaintiff's Second Amended Complaint is confusing, overly redundant, and does not state a cause of action as plead. As such, ACE hereby makes such a Motion.

4. Third, *Federal Rule of Civil Procedure 12(b)* must be raised when a party fails to state a claim upon which relief can be granted.

5. As indicated herein, Plaintiff's Second Amended Complaint does not state a claim for "Breach of Contract" based upon which, this Court can grant any relief. There has been no breach, as conditions and exceptions apply. ACE hereby makes such a Motion for Dismissal.

**Supporting Facts**

6. Jurisdiction is plead in Paragraphs 1-4 of Plaintiff's Second Amended Complaint and does not establish Diversity, as Ms. Johnson and her Estate and Ace are all "residents" of Pennsylvania.

7. The sole allegation against ACE is listed as, "Count Four". It requests relief for "Breach of Contract – Uninsured Motorist Coverage".

8. The Plaintiff incorporates each and every paragraph made prior thereto into Count Four. As such, the Plaintiff has incorporated pleadings which are immaterial, irrelevant and

redundant to a Breach of Contract Claim. This essentially makes the Breach of Contract Claim a 41 paragraph Claim that is so indefinite and redundant that a response cannot be drafted.

9. The Contract attached as Exhibit "B" to Plaintiff's Second Amended Complaint clearly and without question contains a provision or provisions that was/were excluded by the Plaintiff, as the Plaintiff failed to attach a full and complete copy of the Excess Rental Liability Policy. Several pages were omitted. A complete copy thereof is attached hereto as Exhibit "A" to this Motion. As such, ACE cannot adequately respond to the contentions asserted by the Plaintiff, as the claim is based upon an incomplete document.

10. Plaintiff's Second Amended Complaint makes a claim for Breach of Contract. However, Paragraph 5 of the Rental Liability Policy (which was previously omitted) excludes punitive or exemplary damages. Despite this, Plaintiff has asserted a claim for punitive or exemplary damages. As such, a more definite statement is necessary and/or dismissal is appropriate with regard to the entitlement of exemplary and/or punitive damages such that ACE can respond.

11. The subject Excess Rental Liability Policy includes an exclusion under Paragraph V(b), which excludes bodily injury to or property damage to any person who is related to any insured by blood, marriage or adoption and residing in the same household (which was previously omitted). Plaintiff has failed to plead any facts concerning the application of this exclusion and thus a more definite statement is necessary or dismissal is appropriate.

12. The Excess Rental Liability Policy includes special conditions to bring an uninsured or underinsured motorist claim (previously omitted). ACE will only pay benefits for uninsured/underinsured motorist coverage after a liability bond, any underlying protection coverage, or any other policies providing coverage have been exhausted by judgments or payments. The

Plaintiff does not plead that payments or judgments of any underlying coverage have been made. As such, no claim can be brought against ACE for Breach of Contract as prerequisite conditions have not yet been met and dismissal is appropriate. Otherwise, the Plaintiff has failed to make a definite statement concerning how these conditions have been met or otherwise due not apply.

13. Until such time as Plaintiff has succinctly limited the allegations to merely those related to the purported Breach of Contract, has attached a full and complete Excess Rental Liability Policy, and has established allegations about how said policy was breached, ACE cannot respond and thus requests relief from this Court in the form of an Order requiring the Plaintiff to make a more definite statement.

14. Alternatively and additionally, dismissal is appropriate as Plaintiff has not stated any claim upon which relief can be granted, as he failed to attach or address the subject agreement and its prerequisite conditions and exclusions. These separate conditions/exclusions prohibit this suit from going forward as plead.

15. Most importantly, there is no jurisdiction under the law based upon the face of the subject Complaint.

## MEMORANDUM OF LAW

First and foremost, federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994); Wymbs v. Republican State Executive Comm., 719 F.2d 1072, 1076 (11th Cir.1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. See Kokkonen, 511 U.S. at 377.

The diversity statute confers jurisdiction on the federal courts in civil actions between citizens of different states, in which the jurisdictional amount of greater than $75,000, exclusive of interest and costs, is met. See 28 U.S.C. § 1332(a)(1). Diversity jurisdiction is defeated if any plaintiff shares the same state citizenship with any defendant. See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1337 (11th Cir.2002). This rule is known as "complete diversity." Id. at 1338. This case must therefore must be remanded or dismissed, as there is no diversity.

As for the general deficiencies in pleading and Plaintiff's cause of action, ACE provides the following support:

*Federal Rule of Civil Procedure 12(e)* states:

> MOTION FOR A MORE DEFINITE STATEMENT. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Additionally, *Federal Rule of Civil Procedure 12(b)(6)* requires the defense of failure to state a claim upon which relief can be granted to be brought forth in the responsive pleading if so required. Based upon the Plaintiff's failure to attach a full and complete copy of the Excess Rental Liability Policy and thus Plaintiff's failure to address the prerequisite conditions and exclusions thereto, the claim for Breach of Contract is subject to dismissal.

These Counts can be brought in the same Motion pursuant to *Federal Rule of Civil Procedure 12(g)*.

WHEREFORE, Defendant, ACE AMERICAN INSURANCE COMPANY, moves for an

order granting its Motion to Dismiss and/or for More Definite Statement.

Respectfully submitted this 5th day of March, 2008.

_____
JOHN M. PHILLIPS, ESQUIRE
Dore Lanier & Phillips, Chartered
ASB - 2981-H59P
Attorney for ACE American Insurance Co.
76 South Laura Street, Suite 1701
Jacksonville, FL 32202
Telephone: (904) 358-7881
Facsimile: (904) 358-7899
E-mail: jmphillips@dorelaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 5, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed a true and correct copy of the foregoing by first-class mail to Zachary T. Collins, Esquire and Tonya Denita Powell, Esquire, 207 Montgomery Street, Suite 213, Montgomery, Alabama 36104, attorneys for Plaintiff; William Christopher Waller, Jr., Esquire and James A. Rives, Esquire, Ball Ball Matthews & Novak, PA, Post Office Box 2148, Montgomery, Alabama 36102-2148, attorneys for Denita Colvin; and to

David Wayne Henderson, Esquire and Randall C. Morgan, Esquire, Post Office Box 116, Montgomery, Alabama 36101-0116, attorneys for Eva Baldwin.

                               **JOHN M. PHILLIPS, ESQUIRE**
                               Dore Lanier & Phillips, Chartered
                               ASB - 2981-H59P
                               Attorney for ACE American Insurance Co.
                               76 South Laura Street, Suite 1701
                               Jacksonville, FL 32202
                               Telephone: (904) 358-7881
                               Facsimile: (904) 358-7899
                               E-mail: jmphillips@dorelaw.com

POLICY NUMBER: CGO G23723463

ACE American Insurance Company
1601 Chestnut Street
Philadelphia, PA 19101-1484

# Excess Rental Liability Policy

| Policy Number: | CGO G23723463 |

I. **INSURING AGREEMENTS**

In consideration of the payment of the Premium as specified in the Declarations and subject to all the terms of this Policy, the **Company** agrees with the **Named Insured** as follows:

A. Excess Liability Coverage

The **Company** will pay all sums in excess of those payable under the terms of the **Underlying Protection**, up to the limit of liability identified in the Declarations, that the **Insured** is legally obligated to pay as damages, but only if they are because of **Bodily Injury** or **Property Damage** arising out of the operation or use of an **Automobile**;

(1) by an **Authorized Driver/User**;

(2) during the term of a **Rental Agreement**; and

(3) within the **Policy Territory**.

Who is an **Insured**?

(a) The **Named Insured** described in Item 3 of the Declarations; and

(b) The **Authorized Driver** of the **Automobile**.

B. Uninsured/Underinsured Motorists Coverage

If uninsured/underinsured motorists coverage is afforded by **Underlying Protection**, the **Company** will also pay all sums the **Insured** is legally entitled to recover as compensatory damages from the owner or driver of an **Uninsured Motor Vehicle** or **Underinsured Motor Vehicle** in excess of those payable under the terms of **Underlying Protection**. The damages must result from **Bodily Injury** or, if required by the law of the state in which the **Automobile** is principally garaged, **Property Damage**, and they must:

(a) exceed the amount of the minimum coverage limits required to be provided for such coverage by the law of the state in which the **Automobile** is principally garaged; and

(b) be sustained by the **Insured** as the result of an accident involving an **Automobile** that takes place during the term of the **Rental Agreement** and within the **Policy Territory**.

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the Uninsured Motor Vehicle or Underinsured Motor Vehicle.

If uninsured/underinsured motorists coverage is not afforded by **Underlying Protection**, this uninsured/underinsured motorists coverage does not apply.

Who is an **Insured**?

The following persons are **Insureds** under this coverage:

(a) The **Authorized Driver** of the **Automobile**; and

(b) Any person occupying the **Automobile** with the permission of its **Authorized Driver**.

Exhibit "A"

Uninsured Motorists/Underinsured Motorists Special Conditions:

    (a) The **Company** will pay under this uninsured/underinsured motorists Coverage only after all liability bonds, **Underlying Protection** coverage, or any other policies providing coverage have been exhausted by judgments or payments.

    (b) Any judgment for damages arising out of a suit brought without its written consent is not binding on the Company.

    (c) ARBITRATION: Where permitted by law or statute, arbitration must be used in the settlement of a disputed claim as follows:

        (1) If the **Company** and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or **Underinsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by the Insured, both parties may agree to an arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this coverage form may not be arbitrated. If both parties so agree, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

        (2) Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

    (d) NOTICE OF LOSS: In addition to the Notice of Loss general condition located in section VII of this contract, the following additional condition applies:

The Insured shall promptly notify the police if a hit-and-run driver is involved.

    (e) SUBROGATION: In addition to the Subrogation general condition located in section VII of this contract, the following additional condition is hereby added:

If we make any payments and the Insured recovers from another party, the Insured shall hold the proceeds in trust for us and pay us back the amount we have paid.

## II. LIMITS OF LIABILITY

A. This is excess insurance and only applies to those coverages for which **Underlying Protection** are shown in the Declarations of this Policy.

B. It is expressly agreed that liability for any loss shall attach to the **Company** only after the **Underlying Protection** has admitted liability or shall have been held liable to pay the full amount of its liability and the **Company** shall then be liable to pay only such additional amounts up to the applicable Limit of Liability described in Item 6 of the Declarations.

C. Regardless of the number of **Insureds**, premiums paid, claims made or vehicles involved in an accident, the most we will pay for all damages that exceed those payable under the **Underlying Protection** and that result from any one accident, is the applicable Limit of Liability described in the declarations or schedule.

    D. The insurance afforded applies separately to each **Insured** by or against whom a claim is made or suit is brought except that the inclusion of more than one **Insured** shall not operate to increase the **Company's** Limit of Liability described in Item 6 of the Declarations.

    E. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage form and any other coverage form.

    We will not make a duplicate payment under this coverage form for any element of loss for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under workers' compensation, medical payments, disability benefits or similar law.

### III. COSTS, CHARGES AND EXPENSES LIABILITY

    A. When coverage is available to the **Insured** under any **Underlying Protection**, the **Company**, although without obligation to do so, shall have the right and opportunity to associate in the defense and control of any claim or suit reasonably likely to involve the **Company** under this Policy.

    B. In addition to the Limits of Liability, the **Company** will pay for claims and suits covered under this Policy:

        (1) All expenses the **Company** incurs;

        (2) The cost of bonds to release attachments in any suit the **Company** defends but only for bond amounts within our Limits of Liability;

        (3) All costs taxed against the **Insured** in any suit the **Company** defends; and

        (4) All interest on the full amount of any judgment that accrues after entry of the judgment in any suit the **Company** defends, but the **Company's** duty to pay interest ends when the **Company** has paid, offered to pay or deposited in court the part of the judgment that is within the Limits of Liability.

### IV. DEFINITIONS

The following words and phrases have special meaning throughout this Policy:

    A. "**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or equipment attached thereto) that the **Named Insured** rents pursuant to a **Rental Agreement**, but does not include **Mobile Equipment**.

    B. "**Authorized Driver**" means only those persons authorized by the terms of a **Rental Agreement** to operate the **Named Insured's Automobile**.

    C. "**Bodily Injury**" means bodily injury, sickness or disease including death resulting from any of these.

    D. The "**Company**" means the insurance Company shown on the Declarations who is providing this insurance.

    E. "**Insured**" means: a person described under the applicable "Who is an Insured" provision of either: 

        1. Section I., Insuring Agreement, Excess Liability Coverage; or

        2. Section I., Insuring Agreement, Uninsured/Underinsured Motorists Coverage.

    F. "**Liability Insurance Supplement**" means the insurance provided by this Policy.

    G. "**Mobile Equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

        1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2. Vehicles maintained for use solely on or next to premises you own or rent;

    3. Vehicles that travel on crawler treads;

    4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        a. Power cranes, shovels, loaders, diggers or drills; or

        b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

    5. Vehicles not described in paragraphs 1,2,3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a. Air compressors, pumps and generators, including spraying, welding, building clearing, geophysical exploration, lighting and well servicing equipment; or

        b. Cherry pickers and similar devices used to raise or lower workers;

    6. Vehicles not described in paragraphs 1,2,3, or 4 above that are self-propelled vehicles with the following types of permanently attached equipment:

        a. Equipment designed primarily for:

            (1) Snow removal;

            (2) Road maintenance, but not construction or resurfacing; or

            (3) Street cleaning;

        b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

        c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

H. "Named Insured" means the entities described in Item 1 of the Declarations.

I. "Occupying" means in, upon, getting in, on, out or off of a covered **Automobile**.

J. "Policy Period" means the period described in Item 4 of the Declarations during which the **Named Insured** may offer **Rental Agreements** to which this insurance will apply and does not refer to the period during which an **Insured** is covered by the Policy.

K. "Policy Territory",

    a. When used in reference to a **Rental Agreement**, means the United States, (except New York, Texas, Puerto Rico and the Virgin Islands); or

    b. When used in reference to the location of an accident, means the United States, Puerto Rico, the Virgin Islands and Canada.

"**Policy Territory**", does not include Mexico.

L. "Property Damage" means physical injury to or destruction of tangible property which occurs during the **Policy Period**, including the loss of use thereof at any time resulting therefrom.

M. "Rental Agreement" means a signed agreement to rent or lease an **Automobile** that is entered into:

    (1) during the **Policy Period**;

    (2) within the **Policy Territory**;

   (3) by the **Named Insured** and an individual;

   (4) for the individual's rental or lease of the **Named Insured's "Automobile"** for a period not exceeding thirty (30) days.

N. **"Rental Period"** means the period for which an **Automobile** is rented. The first day of the **Rental Period** must occur during the **Policy Period** for this policy to apply.

O. **"Underlying Protection"** means a standard policy of automobile liability insurance or an approved program of self-insurance of substantially similar scope, that meets or exceeds minimum motor vehicle liability requirements for a rental vehicle to which this insurance applies.

P. **"Uninsured Motor Vehicle"** means a land motor vehicle or trailer:

 a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where an **Automobile** is principally garaged;

 b. For which an insuring or bonding company denies coverage or becomes insolvent; or

 c. That is a hit-and-run vehicle and neither the driver nor the owner can be identified. The vehicle must either:

  (1) Hit an **Insured** or the **Automobile** the **Insured** is occupying; or

  (2) Cause **Bodily Injury** to an **Insured** without hitting an **Insured** or the **Automobile** the **Insured** is occupying. The facts of the accident must be proved. We may request supporting evidence beyond the testimony of a person making a claim under this or any similar coverage to support the validity of such claim.

However, **Uninsured Motor Vehicle** does not include any vehicle:

 (a) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

 (b) Designed for use mainly off public roads while not on public roads;

 (c) Owned by a governmental unit or agency;

 (d) A vehicle operated on rails or crawler treads;

 (e) Insured under a basic automobile insurance policy issued in accordance with state law; or

 (f) While located for use as a residence or premises.

Q. **"Underinsured Motor Vehicle"** means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of an accident but the limit of liability of which is less than the excess limit of liability under this coverage form.

However, an **Underinsured Motor Vehicle** does not include any vehicle:

 (1) Owned or operated by a self-insurer under any applicable motor vehicle law;

 (2) Owned by any government unit or agency;

 (3) Operated on rails or crawler treads;

 (4) Designed for use mainly off public roads while not on public roads;

 (5) While located for use as a residence or premises; or

 (6) Owned by or furnished or available for the regular use of any **Insured**.

V. **EXCLUSIONS:**

In addition to those exclusions contained in the **Rental Agreement**, this insurance does not apply to:

A. Liability imposed under any **Uninsured/Underinsured Motorist** or automobile no-fault or first party personal injury law, or any other law similar to any of the foregoing. By accepting this Policy, the **Named Insured** agrees it is acting on its own behalf and on behalf of all other persons who may at any time become **Insureds** under this Policy and the **Named Insured** rejects, to the extent permitted by law, the inclusion of any coverage which might otherwise be required under any such laws. However, this exclusion does not apply to the first $100,000 of damages an **Insured** is entitled to collect under the terms of any uninsured or underinsured motorist coverage if first afforded by **Underlying Protection**.

B. **Bodily Injury** to or **Property Damage** to any **Insured**; nor to the extent permitted by law in the state where the **Rental Agreement** is signed, to **Bodily Injury** or **Property Damage** to any person who is related to any **Insured** by blood, marriage or adoption and residing in the same household.

C. Punitive or exemplary damages.

D. Any obligation for which any **Insured** or any carrier as his Insurer may be held liable under any Workers' Compensation, occupational disease, unemployment compensation or disability benefits law or under any similar law. However, this exclusion does not apply to liability of other assumed by the **Insured** under contract.

E. **Bodily Injury** or **Property Damage** arising out of or in connection with the discharge, dispersal, release or escape or seepage of oil, petroleum substances or derivatives (including any oil, refuse or oil mixed with wastes), smokes, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, bog, marsh, swamp or wetland and including but not limited to hazardous substances in the ground water, the subsoil or anything contained therein. This exclusion shall also apply to the clean-up costs incurred and any **Bodily Injury** or **Property Damage** arising from or in connection with anything contained in the preceding sentence. However, this exclusion does not apply if:

1. The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of the covered **Automobile**; and

2. The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage to the **Automobile**.

F. Except with respect to Occurrences taking place in the United States of America, or Canada, any liability of the **Insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

G. Except insofar as coverage is available to the Insured or under the Underlying Protection, to:

1. liability of any **Insured** or any employee of said **Insured** with respect to **Bodily Injury** to another employee of the same employer injured in the course of such employment.

2. liability arising out of (a) the ownership, maintenance, operation, use, loading or unloading of any vehicle while being used in any prearranged or organized racing speed or demolition contest or activity or (b) the operation or use of any snowmobile or trailer designed for use therewith.

H. **Bodily Injury** or **Property Damage** arising out of the transportation, storage, handling, distribution, sale, or disposal of asbestos or goods or products containing asbestos.

I. **Bodily Injury** or **Property Damage** arising out of the manufacturing, handling, distribution, sale, application, consumption or use of any products known as polychlorinated biphenyl or which contains polychlorinated biphenyl derivative or which is generally known in the chemical trade as having a like formulation, structure or function by whatever name manufactured, sold or distributed.

J. **Bodily Injury** or **Property Damage**:

1. With respect to which an Insured under this Policy is also an insured under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, American Nuclear Insurer, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability;

2. Resulting from the hazardous properties of **Nuclear Material** and with respect to which:

   a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof;

   b. The **Insured** is or, had this Policy not been issued, would be entitled to indemnity from the United States of America, or any agency, thereof, under any agreement entered into the United States of America or any agency, thereof, with any person or organization; or

3. Resulting from the **hazardous properties of Nuclear Material** if

   a. The **Nuclear Material** is at any nuclear facility owned by or on behalf of the Insured or has been discharged or disbursed therefrom;

   b. The **Nuclear Material** is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   c. The **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America its territories or possessions or Canada, this exclusion 3.c. applies only to **Property Damage** to such **nuclear facility** and any property threat.

As used in this exclusion,

"**Property Damage**" includes all forms of radioactive contamination of property.

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear Material**" means source material, special Nuclear Material or by-product material.

"**Source Material**", "**Special Material**" and "**By-Product Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent fuel**" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (i) containing by-product and (ii) material resulting from the operation by any person or organization of any nuclear facility included within the definition of "**Nuclear facility**" under paragraph (1) or (2) below.

"**Nuclear facility**" means

(1) Any nuclear reactor.

(2) Any equipment or device designed or used for (a) separating the isotopes or uranium or plutonium, (b) processing or utilizing **spent fuel** or (c) handling processing or packaging **waste**.

(3) Any equipment or device used for the processing, fabricating or alloying of special material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basing, excavating premises or place prepared or used for the storage or disposal of waste and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operation.

(5) "**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

## VI. POLICY TERRITORY

This insurance shall apply to losses which occur during the **Rental Period** within the United States, Puerto Rico and the Virgin Islands and Canada but only if the loss arises out of an **Automobile** that is rented in the United States, (except New York, Texas, Puerto Rico and the Virgin Islands). Policy Territory does not include Mexico.

## VII. CONDITIONS

A. ACCEPTANCE BY INSURED: By accepting **Liability Insurance Supplement** in the Rental Agreement, the **Insured** who signs the **Rental Agreement** agrees that he/she is acting on his/her own behalf and on behalf of all other persons who may at any time become an **Insured** under the **Rental Agreement**.

B. ACTION AGAINST COMPANY: No action shall lie against the **Company** unless as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgement against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person, organization or their legal representative is entitled to recover under this Policy after they have secured a judgment or written agreement against the **Insured**. Recovery is limited to the extent of the insurance afforded by this Policy. No person or organization has any right under this policy to include the **Company** in any direct action against the **Insured** to determine any **Insured's** liability nor will the **Company** be brought into such an action by the Insured or his/her representative. If the **Insured** or the estate of the **Insured** becomes bankrupt or insolvent, it does not change any of the **Company's** obligations under this Policy.

C.  **APPEALS:** In the event the **Insured** elects not to appeal a judgment in excess of the **Underlying Protection**, the **Company** may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the **Company** exceed the amount set forth in Insuring Agreement for any one Occurrence plus the taxable costs, disbursement and interest incidental to such appeal.

D.  **ASSIGNMENT:** Assignment of interest under this Policy shall not bind the **Company** until its consent is endorsed hereon.

E.  **ASSISTANCE AND COOPERATION OF THE INSURED:** The Insured shall cooperate with the **Company** in the investigation, settlement or defense of any claim or suit.

F.  **BANKRUPTCY OR INSOLVENCY:** The insolvency or financial impairment of an **Insured** does not increase the amounts the **Company** would otherwise have had to pay nor does this Policy become excess of any reduced recoveries available because of the insolvency or financial impairment.

G.  **CANCELLATION:**

   (1) The first **Named Insured** may terminate this Policy by mailing or delivering to the **Company** advance written notice of such termination.

   (2) The Company may terminate this Policy by mailing or delivering to the first Named Insured written notice of such termination at least:

   a.  15 days before the effective date of such termination if the **Company** terminates for nonpayment of Premium; or

   b.  90 days before the effective date of such termination if the **Company** terminates for any other reason.

   (3) Termination as set forth in sub-paragraph (1) and (2) above shall not affect the right of any person who became an Insured prior to effective date of such termination but coverage shall terminate at the end of the Rental Period.

   (4) The **Company** will mail or deliver their notice to the first Named Insured's last mailing address known to them.

   (5) Notice of termination will state the effective date of such termination. The **Policy Period** will end on that date.

   (6) If notice is mailed by either the **Company** or the first Named Insured, such notice shall be sent via certified mail. Proof of mailing will be sufficient proof of notice.

H.  **CHANGES:** Notice to or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy nor stop the **Company** from asserting any rights under the terms of this Policy, nor shall the terms of this Policy, nor shall the terms of this Policy be waived or changed except by endorsement issued to form a part of this Policy, signed by an authorized representative of the **Company**.

I.  **CONCEALMENT, MISREPRESENTATION OR FRAUD:** This Policy shall be void with respect to any claim where an **Insured** commits fraud, or intentionally conceals or misrepresents any material fact.

J.  **DECLARATIONS:** By acceptance of this Policy, the **Insured** agrees that the statements made in the Declarations are its agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between itself and the **Company** or any of its representatives relating to this Insurance.

K.  INSPECTION AND AUDIT: The **Company** shall be permitted but not obligated to inspect the **Named Insured's** property and operations at any time subject to applicable security regulations, Neither the **Company's** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on behalf of or for the benefit of the **Named Insured**, or other, to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

L.  NOTICE OF LOSS: When an event causing injury or damage takes place which is reasonable likely to give rise to a claim under this Policy, written notice shall be given as soon as practicable by or on behalf of the **Insured** to the **Company** or any of its authorized agents in addition to any obligation the **Insured** may have under the **Underlying Protection** or any other Insurance. Such notice shall contain particulars sufficient to identify the **Insured** and reasonably obtainable information concerning the time, place and circumstances of such event and pertinent details. The **Insured's** shall give like notice of any claim or suit on account of such event and shall immediately forward to the **Company** every demand, notice, summons or other process received by him or his representative, together with copies of reports or investigations made by the **Insured** with respect to such claim or suit.

M.  PREMIUM: Premium due the **Company** for this Policy shall be that amount shown in Item 7 of the Declarations and is payable upon the Effective Date of this Policy. Upon termination of this Policy, the earned premium shall be computed in accordance with the rates applicable to this insurance.

N.  SERVICE OF SUIT: is agreed that in the event of the failure of the **Company** to pay any amount claimed to be hereunder, the **Company** and **Insured** will submit to the jurisdiction of the Supreme Court of the State of Pennsylvania, and will comply with all the requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of State of Pennsylvania.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the **Company** hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured**, or any beneficiary hereunder, arising out of this Policy.

O.  SEVERABILITY OF INTEREST: The insurance afforded by this Policy applies separately to each **Insured** and against whom claim is made or suit is brought, but the inclusion herein of more that one Insured shall not operate to increase the limits of the **Company's** liability beyond those stated in Item 6 of the Declarations.

P.  SUBROGATION: In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after the loss to prejudice such rights.

All recoveries or payments recovered or received subsequent to a settlement under this Policy shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the **Insured** and the **Company**.

Q.  TERMS OF POLICY CONFORM TO STATUTE: Terms of this Policy which are in conflict with the statues of the State, Province or territory wherein this Policy is issued are hereby amended to conform to such statues.