**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

**ROBERT JOHNSON, as**  )
**Personal Representative**
**for the ESTATE OF IRENA JOHNSON,**)

      **Plaintiff,**  )     **CIVIL ACTION NO.: 2:07cv1068-MHT**

**v.**  )

**DENITA COLVIN and**  )
**WILLIE EVA BALDWIN, et al.**

                    )

      **Defendants.**

**BRIEF OF DEFENDANT WILLIE EVA BALDWIN IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

      COMES NOW Defendant Willie Eva Baldwin (hereinafter "Defendant Baldwin") and submits the following Brief in Support of her Motion for Summary Judgment filed on this date.

**SUMMARY OF CONTENTIONS OF THE PARTIES AND PRESENT
STATUS OF THE LITIGATION**

      Plaintiff Robert Johnson is the son of Irena Johnson, deceased.  Irena Johnson was the sister of Defendant Baldwin who is being sued by her nephew, as Personal Representative of the Estate of Irena Johnson.

      The lawsuit stems from an automobile accident that occurred in Montgomery, Alabama, on July 28, 2007, on Interstate 85 near the Day Street exit.  Irena Johnson died as the result of a collision between a Hertz rental car being driven by Defendant Baldwin and a vehicle being driven by a co-defendant, Denita Colvin.  The complaint contains one count, i.e., Count III, against Defendant Baldwin for wrongful death based upon

1

wantonness. (Exhibit A to Summary Judgment Motion). Co-defendant Denita Colvin, whose blood/alcohol content was .11 after the accident, has entered into a *pro tanto* settlement with the plaintiff and is no longer a party to this action. Defendant Baldwin filed an answer to plaintiff's second amended complaint, denying all allegations and asserting numerous defenses, including the applicability of Alabama's guest statute, *Ala. Code* § 32-1-2 (1975). (Exhibit A to Summary Judgment Motion).

## NARRATIVE STATEMENT OF UNDISPUTED MATERIAL FACTS

On the day before the automobile accident, Defendant Willie Eva Baldwin, then age 90, and her two sisters, Ella Prather and the decedent Irena Johnson, had traveled together from Philadelphia, Pennsylvania to Georgia, to visit relatives. (Baldwin dep. p. 43, lines 11-15).[1] The three sisters had been making this trip together by vehicle every year since the middle 1940s. (Baldwin dep. p. 43, lines 16-20; p. 103, lines 16-23; p. 104, lines 1-11). Prior to 2007, the three sisters had always traveled in Defendant Baldwin's vehicle approximately 1,300 miles from Philadelphia to the Atlanta area to visit their relatives. (Baldwin dep. p. 44, lines 12-23; p. 45, lines 1-5).

In 2007, rather than travel by vehicle from Pennsylvania to Georgia, Defendant Baldwin and her sisters decided to fly to Atlanta and rent a car to drive to Cuthbert, Georgia, where some of their relatives resided. (Baldwin dep. p. 144, lines 21-23). The reason they decided to fly into Atlanta as opposed to driving to Atlanta as they had done in the past was that Irena Johnson felt her sister's car, a 1987 model, was so old that it

---

[1]Prior to the accident, Defendant Baldwin and her sister Irena Johnson had lived together in Philadelphia about 40 years. (Baldwin dep. p. 165, lines 11-14). Since the accident in July 2007, Defendant Baldwin has resided with her nephew, who is suing her. (Baldwin dep. p. 12, lines 7-22).

might not make the trip.  (Baldwin dep. p. 145, lines 1-8; p. 146, lines 16-18).  Prior to July 27, 2007, no family member had ever told Defendant Baldwin she should not drive a vehicle nor had they expressed any concern to her about her ability to drive.  (Baldwin dep. p. 147, lines 4-11).

Upon arriving at the  Hartsfield-Jackson International Airport in Atlanta, Georgia, on July 27, 2007, the day before the accident, Defendant Baldwin rented a vehicle from Hertz Rental Car Company.  Defendant Baldwin signed the rental car paperwork and paid the rental charge using her credit card.  (Baldwin dep. p. 55, lines 1-23; p. 56, lines 1-23; p. 58, lines 15-22).  Irena Johnson and Ella Prather were in the rental vehicle being driven by Defendant Baldwin when the three sisters became lost after leaving the airport, and instead of driving to their destination, i.e., Cuthbert, Georgia, they ended up in Florida.  (Baldwin dep. p. 67, lines 21-23; p. 68, lines 1-9).  The following day, still lost, they ended up in Montgomery.  (Baldwin dep. p. 67, lines 19-22).

Apparently, the three sisters stayed the night of July 27, 2007, in a hotel room. (Baldwin dep. p 71, lines 13-19; p. 99, lines 1-12).  Defendant Baldwin testified that her sister Irena did not give her any money for the hotel room, and she did not ask Irena to give her money for the room.  (Baldwin dep. p. 169, lines 7-15).  She further testified that she did not require Irena to give her any money for expenses and that she would have taken Irena on the trip even if Irena had not given her any money for expenses.  (Baldwin dep. p. 169, lines 22-23; p. 170, lines 1-5).[2]  Defendant Baldwin testified that if her sister Irena

---

[2]It is undisputed that Defendant Baldwin's other sister, Ella Prather, likewise was not required or expected to contribute toward trip expenses.  (Baldwin dep. p. 170, lines 5-12).  In fact, Defendant Baldwin paid for Mrs. Prather's airfare because she could not afford it.  (Baldwin dep. p. 50, lines 17-22).

had given her money toward the rental car expense, Irena would have done that on her own. (Baldwin dep. p. 169, lines 16-21).

The accident occurred when Defendant Baldwin was backing up on I-85 near the Day Street exit. Defendant Baldwin testified that when she was backing up, she thought she was on the right edge of the interstate in an area where cars did not travel. (Baldwin dep. p. 168, lines 11-23, p. 169, lines 1-6, p. 89, lines 7-17). She further described the lane she thought she was on while backing up as "that space that if you had car trouble that you would pull over there," (Baldwin dep. p. 89, lines 10-13) and "that space that's not part of the highway where if you broke down you would stop anyway." (Baldwin dep. p. 88, lines 18-20).

Mrs. Baldwin agreed in her deposition that backing up in a highway lane that is used to travel on would be "worse than dangerous," (Baldwin dep. p. 90, lines 4-7) and that injury or death might very well occur. (Baldwin dep. p. 90, lines 8-12). She testified she would never back up in the highway with other cars coming behind her because to do so would "kill everybody in that front car." (Baldwin dep. p. 88, lines 12-23; p. 89, lines 1-6).

## THE ALABAMA GUEST STATUTE APPLIES HERE

Although Plaintiff mentions Defendant Baldwin in Counts I and II of his Second Amended Complaint alleging negligence and gross negligence against former co-defendant Colvin, Plaintiff did not specifically request a judgment be entered against Defendant Baldwin based upon those causes of action; rather, Plaintiff only requested a judgment be entered in his favor against Defendant Colvin. (Exhibit A to Summary Judgment Motion). Therefore, Defendant Baldwin assumes Plaintiff has conceded that Alabama's Guest Statute, *Ala. Code* § 32-1-2 (1975), applies on the ground that it is undisputed Defendant

4

Baldwin was not in any way motivated by a contribution from her sisters toward the trip expenses when she drove them to visit their relatives in Georgia.  In her deposition, Defendant Baldwin testified as follows:

> Q:    Ms. Baldwin, do you remember if your sister Irena gave you any money for the hotel room?
>
> A.    No.
>
> Q.    Do you remember if she gave you any money for the rental car?
>
> A.    No.
>
> Q.    Did you ask Irena to give you any money for the hotel room?
>
> A.    No.
>
> Q.    Did you ask Irena to give you any money for the rental car?
>
> A.    No.
>
> Q.    Would that have been something that she would have done on her own?
>
> A.    She would have done it on her own.
>
> Q.    Did you require that Irena give you any money for expenses?
>
> A.    No.
>
> Q.    Would you have taken Irena on this trip anyway if she hadn't given you any money for expenses?
>
> A.    Right.
>
> Q.    And your other sister that went, Ms. Prather, on the trip with you, she didn't give you any money, did she?
>
> A.    No.
>
> Q.    And she didn't give you any money for expenses, did she?

A.    No.

(Baldwin dep. p. 169, lines 7-23; p. 170, lines 1-12).

In *Klaber v. Elliott*, 533 So. 2d 576 (Ala. 1988), the Alabama Supreme Court explained that providing assistance with trip expenses, such as gas, does not automatically convert a "guest" under Alabama's Guest Statute into a paying passenger.  Rather, the Alabama Courts look at whether "the ride was purely social or had a business-related purpose, thus conferring some benefit, whether immediate or anticipated, upon the driver." *Id.* at 577.  (citations omitted).  The Court reiterated its approval of the following explanation from 60 C.J.S. *Motor Vehicles* § 399(5), p. 1015 (1969), that "the sharing of the cost of operating the car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is not motivated by, or conditioned on, such contribution, is nothing more than the exchange of social amenities and does not transform into a paying passenger one who without the exchange would be a guest."  *Klaber*, 533 So. 2d at 577.  *See also*, *Thedford v. Payne*, 813 So. 2d 905 (Ala. Civ. App. 2001) (Guest Statute applied as a matter of law despite payment by passenger to driver who took him to football practice because no evidence was presented that driver conditioned his offer of transportation on passenger paying him.)

Therefore, based upon the undisputed testimony of Defendant Baldwin that she did not condition her willingness to drive both sisters to visit their relatives upon the sisters' contribution toward trip expenses, Alabama's Guest Statute applies to preclude any negligence claim the Plaintiff may attempt to assert against Defendant Baldwin.  *See Smith v. Roland,* 243 Ala. 400, 403, 10 So. 2d 367 (1942) ("'Gross negligence' is negligence, not wantonness.").

6

## DEFENDANT BALDWIN IS ENTITLED TO
## SUMMARY JUDGMENT ON THE WANTONNESS COUNT

In Count III of the Second Amended Complaint, Plaintiff alleges that: "Defendant Baldwin acted intentionally, with wantonness, and with extreme recklessness and disregard for the safety of others by backing into oncoming traffic upon the interstate highway with reckless indifference to the knowledge that such act would likely or probably result in injury or death." (See Exhibit A to Defendant's Summary Judgment Motion, p. 6, ¶ 28).

As previously set forth in Defendant Baldwin's Statement of Undisputed Material Facts, the accident occurred when Defendant Baldwin was backing up on I-85 near the Day Street exit. Defendant Baldwin testified that when she was backing up, she thought she was on the right edge of the interstate in an area where cars did not travel. (Baldwin dep. p. 168, lines 11-23, p. 169, lines 1-6, p. 89, lines 7-17). She further described the lane she thought she was on while backing up as "that space that if you had car trouble that you would pull over there," (Baldwin dep. p. 89, lines 10-13) and "that space that's not part of the highway where if you broke down you would stop anyway." (Baldwin dep. p. 88, lines 18-20).

Mrs. Baldwin agreed in her deposition that backing up in a highway lane that is used to travel on would be "worse than dangerous," (Baldwin dep. p. 90, lines 4-7) and that injury or death might very well occur. (Baldwin dep. p. 90, lines 8-12). She testified she would never back up in the highway with other cars coming behind her because to do so would "kill everybody in that front car." (Baldwin dep. p. 88, lines 12-23; p. 89, lines 1-6).

It is clear from Mrs. Baldwin's testimony that she truly believed she was backing up on the side of the interstate, as opposed to backing up on a traveling lane of the interstate.

7

Under Alabama law, in order to present sufficient evidence to defeat a Motion for Summary Judgment on a wantonness count, a Plaintiff must present substantial evidence of conduct which meets the well-settled definition of "wantonness" by Alabama courts.

In *Alfa Mutual Insurance Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998), the Alabama Supreme Court stated that wantonness is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. "*Id.* at 1256. In *Phillips v. United Services Automobile Assoc.*, 2008 WL 110475 (Ala. 1/11/08) the Alabama Supreme Court recently reiterated that "wantonness imports premedition" and " is characterized as an act which cannot exist without a purpose or design . . . ." *Id.* at p. 3.

In *Ex parte Essary*, 2007 W.L. 3238879 (Ala. 11/2/07), the Alabama Supreme Court recently upheld a trial court's grant of summary judgment on the wantonness count in an automobile accident case. In that case, Defendant Essary had slowed to a "rolling stop" at an intersection and then attempted to cross the intersection between two moving vehicles. The Court noted that the evidence presented by the Plaintiffs further showed that Essary attempted to "beat the traffic" or "shoot the gap" by passing between two vehicles. In upholding the trial court's summary judgment ruling on the wantonness count, the Alabama Supreme Court reasoned as follows:

> "Although the evidence indicates that Essary knowingly entered the intersection, there is nothing from which the trier of fact could infer that, in moving his vehicle through the intersection, Essary's state of mind contained the requisite consciousness, awareness or perception that *injury was likely* to, or *would probably, result.* Indeed, the risk of injury to *Essary* himself was as real as any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior. *See Griffin Lumber Co. v. Harper*, 252 Ala. 93, 95, 39 So. 2d 399, 401 (1949) ('There is

8

a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death. *Atlantic Coast Line R. Co. v. Wetherington*, 245 Ala. 313(9), 16 So. 2d 720 [(1944)].').". *Id.* at p. 6. (emphasis original).

Just as the Court found in *Ex parte Essary*, the act of Defendant Baldwin in backing up on what she truly believed was an area beside the travel lanes of the interstate was not so inherently reckless as would impute to her "a depravity consistent with disregard of instinct of safety and self-preservation." *Id.* at p. 6. This conclusion is bolstered by Defendant Baldwin's testimony that backing up on an interstate highway would be dangerous and "would kill everybody in that front car." (Baldwin dep. p. 89, lines 1-6). Defendant Baldwin herself was "in that front car" at the time of the accident. As stated in *Ex parte Essary*, the Court does not expect an individual to engage in self-destructive behavior. Instead, it is anticipated an individual "will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death." Id. at p. 6 (quoting *Atlantic Coast Line R. Co. v. Wetherington*, 245 Ala. 313, 16 So. 2d 720 (1944)). Defendant Baldwin did not consciously, purposely or with premeditation place her sisters and herself in a situation where injury would likely result. She thought she was backing up in an area where it was safe to do so, and as such, did not have the required state of mind to be wanton.

Under Alabama's definition of what constitutes wanton conduct, the Plaintiff has failed to present substantial evidence that Defendant Baldwin had knowledge of the danger presented or acted with reckless indifference to a known danger likely to inflict injury.

9

Therefore, summary judgment is due to be granted in favor of Defendant Baldwin under the circumstances of this case.

Respectfully submitted this the 28th day of July, 2008.

/s/ David W. Henderson
DAVID W. HENDERSON (ASB-4048-D57H)
RANDALL MORGAN (ASB-8650-R70R)
Attorneys for Defendant Willie Eva Baldwin

OF COUNSEL:
Hill, Hill, Carter, Franco,
        Cole & Black, P.C.
P.O. Box 116
Montgomery, AL 36101-0116
(334) 834-7600

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the Ala-File system and served a copy via United States Mail, postage prepaid, properly addressed this the 28th day of July, 2008 to the following:

Zachary T. Collins, Esq.
318 North Decatur Street
Montgomery, AL 36104

J. Lenn Ryals, Esq.
RYALS, PLUMMER, DONALDSON,
        AGRICOLA & SMITH
60 Commerce Street, Suite 1400
Montgomery, AL 36104

/s/ David W. Henderson
OF COUNSEL

10