UNITED STATES DISTRICT COURT OF ALABAMA
FOR THE MIDDLE DISTRICT, NORTHERN DIVISION

| | |
|---|---|
| ROBERT JOHNSON, as personal representative of the Estate of IRENA JOHNSON<br><br>　　　Plaintiff,<br><br>v.<br><br>WILLIE EVA BALDWIN, et. al.,<br><br>　　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   CIVIL ACTION NO. 2:07cv1068-MHT<br>*<br>*<br>*<br>*<br>* |

**BRIEF IN SUPPORT OF PLAINTIFF ROBERT JOHNSON'S
MOTION FOR LEAVE TO AMEND COMPLAINT**

**COMES NOW**, the Plaintiff, by and through his counsel of record and files with this Honorable Court this brief in support of his Motion for Leave to Amend his Second Amended Complaint.

## FACTUAL SUMMARY

On July 26, 2007, Defendant Baldwin rented a 2007 Hyundai Sonata from Hertz Rental Car Company (a/k/a Hertz Global Holdings, Inc.) at the Hartsfield-Jackson International Airport in Atlanta, Georgia. (Exhibit O - Baldwin depo. p 58, lines 7-8). At all material times thereto, Plaintiff's mother, Irena Johnson, deceased, was a passenger in the vehicle driven by Defendant Baldwin. (Baldwin depo. p. 105, lines 16-18). On July 27, 2007, while driving to Cuthbert, Georgia, Defendant Baldwin got lost and began traveling on I-85 South and subsequently ended up in Montgomery, Alabama near the I-65 interchange. Witnesses state that Defendant Baldwin was traveling west on I-85 South in the Day Street exit lane near the I-65 interchange when she suddenly started backing up into oncoming traffic on I-85. (Exhibit M - B. Larson depo. p. 15, lines 19-25; p. 16, lines 13; Exhibit N – Caffey depo. p. 45, lines 4-15).

1

Denita Colvin, also traveling west on I-85, collided into the rear of Defendant Baldwin's vehicle in which Irena Johnson, deceased, was a passenger. (Caffey depo. p. 52, lines 19-23; p. 53, lines 1-15). Witnesses state that Denita Colvin acted in a reasonable manner and took evasive actions to avoid the collision but could not avoid striking Defendant Baldwin's vehicle. (B. Larson depo. p. 19, lines 17-23; p. 22, lines 1-8). Corporal G.E. Caffey, lead accident investigator for the Montgomery Police Department, concluded that Defendant Baldwin was the sole contributing cause of the accident. (Caffey depo. p. 46, lines 19-23; p. 47, lines 1-20). As a proximate result of the negligent, gross negligent, and wanton conduct of Defendant Baldwin, Plaintiff's mother, Irena Johnson, was killed. Plaintiff brings this wrongful death action pursuant to § 6-5-410 of the Code of Alabama.

The Plaintiff is before this Honorable Court on a Motion to Amend his Second Amended Complaint. As soon as practicable, the Plaintiff began discovery upon the multiple defendants in this case. Thereafter, the Plaintiff learned through depositions conducted prior to the discovery cutoff deadline of June 9, 2008 certain facts that not only warrant an amendment of the Plaintiff's claims, but will aid in the presentation of the evidence of the jury. However, despite his diligence, Plaintiff was unable to discover facts on the information sought to be amended prior to the Uniform Scheduling Order deadline to amend his pleadings.

## **LEGAL ANALYSIS AND ARGUMENT**

The Plaintiff seeks to amend his complaint on grounds that through the discovery process, the facts of the collision that forms the basis of this suit have been confirmed and

clarified such that an amendment is warranted and would aid in the presentation of the Plaintiff's claims. (See ¶ 7 of Plaintiff's Motion to Amend Second Amended Complaint).

*Fed. R. Civ. P. 15(a)(2)* states that in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. In reviewing motions for leave to amend, courts are guided by *Rule 15(a)'s* instruction that ordinarily leave is to be freely given when justice so requires. *Fed. R. Civ. P. 15(a).* However, *Fed. R. Civ. P. 16(b)* provides that a schedule, such as the one this Court set by entering the Uniform Scheduling Orders, shall not be modified except upon a showing of "*good cause*" and by leave of court. This means that in making a motion for leave to amend a pleading after the deadline set by this Court's scheduling order, a plaintiff must show that good cause exists for their untimely attempt to amend their Complaint. *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998).

To establish good cause the plaintiff must show that the scheduling deadlines could not have been met despite his diligence as to the matter that is the subject of the motion to amend. *Id.* The touchstone of the *Rule 16(b)* inquiry is whether the Plaintiff exercised diligence in attempting to comply with the Scheduling Order deadlines for amending pleadings. *Nobles v. Rural Cmty. Ins. Servs.*, 303 F. Supp. 2d 1279 (11th Cir. 2004). In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment**.** *Saewitz v. Lexington Ins. Co.,* 133 Fed. Appx. 695; 2005 U.S. App. LEXIS 10470 (2005).

**I.   Plaintiff can demonstrate good cause why the scheduling deadlines could not have been met despite his diligence as to the facts on which his motion to amend is predicated.**

On January 15, 2008, this Court issued its Uniform Scheduling Order which imposed a March 24, 2008 deadline for the parties to amend their pleadings. (Doc. 22) On or about January 14, 2008 the Plaintiff began discovery in this case and sent his first set of interrogatories and requests for production pursuant to Rules 33 & 34 of the *Federal Rules of Civil Procedure* to Defendant Baldwin. Said answers were due on or about February 17, 2008.

Prior to receiving the responses to paper discovery, all counsels of record began discussing deposition dates for the parties and known fact witnesses. Depositions for the Plaintiff and Defendant were set and began on February 27, 2008 and continued through the evening of February 28, 2008. (See Exhibit A). Counsel for the parties continued to negotiate deposition dates for fact witnesses and former defendant Denita Colvin. Depositions for Denita Colvin and fact witness Chris Miles were set and conducted in Montgomery, Alabama on March 6, 2008. (See Exhibit B). Depositions were then setup for fact witnesses Brent and Christine Larson in Fort Dodge, Iowa and conducted there on March 18, 2008. (See Exhibits C - G).

On or about March 24, 2008, counsel for the Plaintiff received the transcribed depositions of Plaintiff and Defendant Baldwin, the same date as the deadline date to amend pleadings. On March 25, 2008, one day following the amendment deadline, the Plaintiff received the transcribed deposition of Denita Colvin. Plaintiff did not receive the transcribed deposition of witnesses Brent and Christine Larson until on or about March 28, 2008, four (4) days after the amendment deadline.

On April 18, 2008, counsel for the parties began negotiating available dates to take the deposition of Cpl. Glenn Caffey. (See Exhibits H & I). On May 6, 2008, Plaintiff supplemented his discovery requests to Defendant Baldwin by way of requests for admissions to confirm the testimony learned through her deposition. (See Exhibit J). The Plaintiff sought to have Defendant Baldwin admit through requests for admissions that she had to, and in fact did, back up onto I-85 to get on the ramp that leads to I-65 North. (See Exhibit K - Baldwin RFA Responses Nos. 35 & 36). Defendant Baldwin's admission of the same supports Plaintiff's claims for negligence and gross negligence, in addition to his wantonness claim.

On May 22, 2008, the deposition of Cpl. G.E. Caffey was conducted in Montgomery, Alabama. Plaintiff did not receive the transcribed deposition of Cpl. Caffey until June 11, 2008. (See Exhibit L). After review of Cpl. Caffey's and Brent Larson's deposition testimony, and in connection with Defendant Baldwin's answers to Plaintiff's Requests for Admissions received on June 12, 2008, the facts of the collision; claims for negligence; gross negligence; and issues of sole proximate cause were confirmed and clarified.[1] On June 30, 2008, the Plaintiff and Defendant attempted to resolve their claims through mediation. Although not settled, the mediation was "suspended" and is set to resume on August 12, 2008.

Defendant Baldwin asserts that Plaintiff waited four (4) months to move this Court for leave to amend his complaint. However, the Plaintiff contends that he acted with diligence in conforming to this Court's scheduling order. First, as soon as practicable, the Plaintiff engaged in discovery to seek out information necessary to

---

[1] Based on information learned through the deposition of Cpl. Caffey, counsel for Denita Colvin reluctantly offered to settle with Plaintiff and advised that he had a limited window in which to accept their offer of settlement. Plaintiff settled his claims with Denita Colvin on June 3, 2008.

5

adequately present his claims and identify parties. The Plaintiff has diligently pursued said information through deposition testimony, including traveling to Iowa to depose potential fact witnesses. Through no fault of his own, the transcribed depositions for Defendant Baldwin, Denita Colvin, Brent and Christine Larson, and Cpl. G.E. Caffey were not received in sufficient time to adequately review the same and comply with this Court's scheduling order. As much, the deadlines for amendment of the pleadings could not have been met immediately following the deposition of Defendant Baldwin and Denita Colvin.

Additionally, the discovery cutoff deadline was not until June 9, 2008, and the parties continued to engage in the discovery process, where information that forms the subject of his amendment was confirmed and clarified. Therefore, it cannot be argued by Defendant Baldwin that during the 2 ½ months following the March 24, 2008 amendment deadline that certain facts would not be confirmed, corroborated or clarified such that an amendment past said deadline would be not be warranted or necessary.

**II.  Amendment of Plaintiff's Complaint is warranted because the facts upon which the amendment is predicated were confirmed and corroborated through the depositions of Brent Larson (Exhibit M) and Cpl. G.E. Caffey (Exhibit N).**

Plaintiff filed his motion seeking leave to amend the Complaint within a reasonable time after taking the deposition of Cpl. Caffey on May 22, 2008 and receipt of the transcripts thereof on or about June 9, 2008. In connection with Defendant Baldwin's Responses to Requests for Admissions received on June 12, 2008, Cpl. Caffey's deposition testimony confirmed and supported the facts on which the proposed amendment is predicated.

Specifically, witness Brent Larson stated in his deposition that Denita Colvin's actions led to the accident being much less severe and that she swerved to the right which is what he would have done in that situation. (B. Larson depo. p. 19, lines 17-23; p. 22, lines 1-8). When questioned about Denita Colvin's actions, Mr. Larson testified:

> Q. Mr. Larson, in your opinion, was there anything else that Miss Colvin could have done with respect to her actions or maneuvers in which she would – could have been able to avoid the collision?
>
> A. I don't think there's anything else she could do. I mean, I – I think she applied her brakes, and I obviously saw her swerve and avoid a direct impact, which was fortunate for all of them, I think.

Prior to Mr. Larson's deposition, the information before the Plaintiff was that Denita Colvin was driving under the influence of alcohol when she collided with the Defendant's vehicle. However, Mr. Larson was unaware that Denita Colvin was, in fact, driving under the influence of alcohol at the time of the collision. (B. Larson depo. p.28, line 25; p. 39, lines 1-14). Therefore, the reasonableness of Denita Colvin's actions during the collision would have had to be corroborated by the testimony of Cpl. Glenn Caffey, which despite the Plaintiff's diligence could not be done so before the March 24, 2008 deadline for amendment of pleadings.

On May 22, 2008 the parties conducted the deposition of Cpl. G.E. Caffey. Supporting those opinions and the testimony of Brent Larson, Cpl. Caffey stated: (Caffey depo. p. 45, lines 2-18).

> Q. What did you determine to be the cause of this accident?

> A. Vehicle number one, driven by Ms. Baldwin, and vehicle number two, driven by Ms. Colvin. Vehicle number one was in the right lane on I-85 west…She was in the right lane going across the Day Street exit. Vehicle number two, Ms. Colvin, was behind her. Vehicle number one backing down 85. And vehicle number two did – because she laid down skid marks. Vehicle number two tried to avoid the accident.
>
> Q. Is that consistent with the witnesses' testimony?
>
> A. Yes…

(Caffey depo. p. 46, lines 19-23; p. 47, lines 1-20).

> Q. Looking back on Defendant's 1, who did you determine to be the prime contributing unit?
>
> A. Vehicle number one.
>
> Q. And will you tell the jury what that means and why that's important in your analysis?
>
> A. Prime contributing unit, across the top of the report if you're looking – the fifth line going from left to right – or the fourth line, I believe it is going, going from left to right, prime contributing unit is unit number one. Unit number one in this case is going to be Willie Eva Baldwin, and unit number one is going to be at fault in the accident.
>
> Q. Corporal, going down to unit number two, which you just told us is Ms. Colvin, there's a box where it calls for the officer's opinion on certain things. And in particular Ms. Colvin, the standard box called for your

8

    opinion on whether alcohol or drugs were involved. And what did you indicate?

A. No.

Q. And that's no to alcohol and drugs?

A And drugs, yes.

(Caffey depo. p. 48, lines 18-23; p. 49, lines 5-17).

    Q. Can you list for us all the revisions, corrections, or changes that were made to this corrected report?

    A. …vehicle number two, test results of Ms. Denita Colvin, blood was .115.

    Q. Corporal, based on this Defendant's 2, which is the corrected copy [of the accident report] on the officer's opinion of alcohol and drugs, are those boxes still checked no?

    A. Yes, sir.

    Q. And, Corporal, for the jury, what does that mean?

    A. I didn't – I didn't revise it, because in my opinion when the accident happened, there was no – there was no smell of alcohol. I didn't see where drugs might have played a part in the accident. That's why officer's opinion, it was checked no…

(Caffey depo. p. 51, line 23; p. 52, lines 1-3; 15-17; p. 53, lines 16-23; p. 54, line 1).

    Q. Can you identify these documents?

    A. Yes, sir. It's a statement I took from Ms. Denita Colvin the 28th of July at her – Let's see. It was taken at her residence…

    Q. Now…did Ms. Colvin indicate how the accident occurred?

      A.      Yes, sir.

      Q.      Is that statement consistent with your results of the investigation?

      A.      Yes, sir, it is.

      Q.      Is that statement consistent with the witness statements you took?

      A.      Yes, sir.

      Q.      Is that statement inconsistent with Ms. Baldwin's statement to you?

      A.      Yes, sir, it is.

(Caffey depo. p. 55, lines 19-23; p. 56, lines 6-16).

      Q.      How would you characterize the actions taken by Ms. Colvin on the day of the accident?

      A.      From the skid marks and not seeing any skid marks from the Sonata, I think Ms. Colvin took evasive actions to prevent the accident.

      Q.      Do you have an opinion based on your investigation and your speaking with the witnesses and other things you did in forming your conclusions, do you have an opinion whether or not Ms. Colvin had enough time to react to the accident as it was unfolding?

      A.      Yeah. From looking at how she laid down skid marks, she tried to avoid that accident. So she had time to react to it and she tried. I honestly believe she tried because of the skid marks that she laid down.

(Caffey depo. p. 58, lines 8-20).

      Q.      Once you completed this corrected report that we've identified as Defendant's 2, did this fact with respect to Ms. Colvin's blood alcohol

> level, did that change any of your earlier opinions with respect to what you believed to be the sole cause of the accident?
>
> A. No, sir, it didn't change it.
>
> Q. Based on your investigation and your experience and training, was there anything that you believe Ms. Colvin could have done differently in an effort to avoid the accident completely?
>
> A. No, sir.

(Caffey depo. p. 59, lines 5-20).

> Q. Even after your revised report, what is our opinion with respect to whether alcohol was contributing factor to this accident?
>
> A. Ms. Colvin came over the legal limit, but I don't think the alcohol played a part in the accident. The accident, vehicle number one was backing upon on the interstate. Vehicle number two tried to avoid the accident by swerving to the right, and there was a collision. Its unfortunate that vehicle number two, you know, hit vehicle one and one of the occupants in vehicle number one died, but I don't think vehicle number two was at fault in the accident. It was solely the vehicle number one backing up on the interstate.

When questioned by Defendant Baldwin's counsel, Cpl. Caffey testified:

(Caffey depo. p. 76, lines 16-23; p. 77, lines 1-5).

> Q. Let me represent to you that a witness in this case, which was Bruce Larson's wife – she was in the vehicle with Mr. Larson – has testified in her deposition that she saw the accident, that she witnessed the accident,

11

>   and that she believed that Ms. Colvin had time to avoid the accident. Were you aware of that testimony?
>
> A. No, sir.
>
> Q. Would that testimony in any way change your previous opinions this morning stating that alcohol played no factor in this accident?
>
> A. No, sir.
>
> A. I believe that the alcohol didn't play a factor in the accident. It didn't play a factor in the accident. (Caffey depo. p. 79, lines 16-18).

The proposed amendments do not expand the scope of the case or require additional fact discovery but rather reflect newly discovered information on which to add additional claims against the Defendant.

In *Nobles*, 303 F. Supp. 2d 1279, Nobles and Hales attempted to amend their complaint, among other things, to add claims against Rural Community Insurance Services (hereinafter referred to as "RCIS"). This Honorable Court first looked at whether Nobles' motion was timely under the uniform scheduling orders and amendments thereto entered in this case. *Id.* at 1282. This Court concluded that it was not. *Id.* While this Court did not allow Nobles and Hales to amend their complaint to add a new defendant, it did allow them leave to amend to add claims that related back to the original complaint. *Id.* at 1286-1289.

In that case, RCIS made no argument as to why the motion to amend should not have been granted as to the claims against it. *Id.* at 1289. This Court held that:

> even if RCIS did make such an argument…the court would be inclined to grant Nobles and Hales' motion in the interests of justice, *see Fed. R. Civ. P. 15(a)* ("Leave shall be freely given when justice so requires."), recognizing that such an amendment would relate back to the filing of

> Nobles and Hales' original complaint. *See Fed. R. Civ. P. 15(c)(2)* ("An amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.") *Id.*

The Plaintiff seeks to amend his complaint to add claims for negligence and gross negligence, in addition to his wantonness claim. It is undisputed that the claims asserted in the Plaintiff's proposed amended Complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in his original pleadings. The consistent and undisputed testimony of all witnesses and parties in this case is that Defendant Baldwin backed up on the interstate into oncoming traffic. Such testimony constitutes, at minimum, negligence and/or gross negligence and therefore, an amendment to add these claims is warranted in the interests of justice.

This Court also noted in *Nobles*, supra., that RCIS had not argued that the proposed amendment, insofar as it added claims against it, would prejudice RCIS in any way. *Id.* at 1289. *(citing Beeck v. Aquaslide 'N' Dive Corp*., 562 F.2d 537, 540 (8th Cir. 1977) ("The burden is on the party opposing the amendment to show such prejudice."). As such, the court granted Nobles and Hales' motion to amend insofar as it added claims against RCIS. *Id.*

In her objection to Plaintiff's motion for leave to amend, Defendant Baldwin, too, does not argue that an amendment of the Plaintiff's Complaint would prejudice her in any way. (*See generally* Baldwin's Objection to Motion for Leave to Amend) Therefore, Plaintiff's motion to amend should be freely given.

At the inception of the case, it was unclear as to which defendant was culpable of the conduct resulting in the death of Irena Johnson. After the depositions of Brent Larson

and Cpl. Caffey, Plaintiff's claims and issues of causation and liability became quite clear. Thus, this Court's allowance of amendment to the Plaintiff's complaint to enable him to clarify the issues and present claims that relate back to the original complaint would be consistent with the underlying philosophy of the *Federal Rules of Civil Procedure*; the Rules should "be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Fed. R. Civ. P. 1*.

The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Foman v. Davis*, 371 U.S. 179, 181-182 (1969). Thus, courts routinely grant leave to parties to amend their pleadings under *Rule 15(a)* to set forth transactions, occurrences, or events that could have been included in the original pleading, but were omitted for one reason or another. *Harris v. Garner*, 216 F.3d 970, 996 (11th Cir. 2000). It is entirely contrary to the spirit of the *Federal Rules of Civil Procedure* for decisions on the merits to be avoided on the basis of technicalities. *Foman,* 371 U.S. 179 at 181. The American legal system encourages the efficient resolution of claims on the merits, and not the avoidance of legal issues by means of tightfisted pleading requirements that constitute nothing more than traps for the unwary. *Harris,* 216 F.3d 970 at 997. Even at trial, amendments to conform the pleadings to the evidence should be allowed where no prejudice to the opposing party is proved. *Fed. R. Civ. P. 15.* All of this is in conformance with the "liberal system of notice pleading set up by the Federal Rules, "requiring only a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County*

*Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993).

Given that the facts, although corroborated and confirmed past the deadline for amending pleadings, clarify the Plaintiff's claims in such a way that he can adequately present his case on the merits and that Defendant Baldwin would not be prejudiced by such an amendment, the interests of justice would be served by allowing the Plaintiff leave to amend his Complaint past the scheduling deadline.

## **CONCLUSION**

It cannot be said that the Plaintiff unduly delayed and lacked diligence in confirming and corroborating through discovery the facts that form the subject of his proposed amendment. The Plaintiff began paper discovery as soon as practicable and the parties set depositions of multiple individuals in a timely manner. The transcripts from said depositions were not available to the counsels of record until days before and after the deadline to amend the pleadings. Counsel for the parties traveled to Iowa to depose two fact witnesses and thereafter sought to depose the accident investigator prior to the discovery cutoff deadline. Thus, it is clear that the Plaintiff diligently sought to comply with this Court's scheduling order but could not discover or confirm the information made the subject of his proposed amendment prior to the March 24, 2008 amendment deadline. In addition, former Defendant Denita Colvin was dismissed from this cause on June 3, 2008 and judgment issued on June 20, 2008.

The proposed amendments are neither futile nor made in bad faith. Given that no further discovery is necessary, that the pretrial conference is more than 60 days away, and that the Defendant would not be prejudiced by the Plaintiff's amendment, such an

amendment past the deadline set forth in the Uniform Scheduling Order is warranted in the interest of justice.

**WHEREFORE**, the Plaintiff prays that he is allowed to amend his Second Amended Complaint and file with this Honorable Court his Third Amended Complaint against Defendant Baldwin.

Respectfully submitted this the 4th day of August, 2008.

                                        */s/ Zachary T. Collins*

                                        ZACHARY T. COLLINS (COL126)
                                        Attorney for the Plaintiff

**OF COUNSEL:**
ZACHARY T. COLLINS, ATTORNEY AT LAW, LLC
318 N. Decatur Street
Montgomery, Alabama 36104
Tel: 334-263-5575
Fax: 334-263-5569

## CERTIFICATE OF SERVICE

I, Zachary T. Collins, certify that on the 4th day of August, 2008, the foregoing document was served on counsel/adverse party listed below, properly addressed and pre-paid, in the following manner:

( ) Facsimile;
( ) Facsimile, original to follow by United States mail, first class, properly addressed;
( ) United States mail, first class, properly addressed;
( ) United States mail, Express Mail delivery;
( ) Federal Express, overnight delivery;
( ) United Parcel Service, overnight delivery;
( ) Hand delivery;
(X) CM/ECF

OF COUNSEL:

**DAVID H. HENDERSON (ASB-4048-D57H)**
**RANDALL MORGAN (ASB-8650-R70R)**
Attorneys for Defendant Willie Eva Baldwin
Hill, Hill, Carter, Franco, Cole & Black, P.C.
P.O. Box 116
Montgomery, AL 36101-0116

**J. LENN RYALS, ESQ.**
Attorneys for Defendant Willie Eva Baldwin
**RYALS, PLUMMER, DONALDSON
  AGRICOLA & SMITH, P.C.**
60 Commerce Street, Ste. 1400
Montgomery, Alabama 36104

/s/ *Zachary T. Collins*

**OF COUNSEL**