## UNITED STATES DISTRICT COURT OF ALABAMA
## FOR THE MIDDLE DISTRICT, NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT JOHNSON, as personal representative of the Estate of IRENA JOHNSON** | * * * * | |
| **Plaintiff,** | * * | |
| **v.** | * * | **CIVIL ACTION NO. 2:07cv1068-MHT** |
| **WILLIE EVA BALDWIN, et. al.,** | * * | |
| **Defendants.** | * * * | |

## BRIEF IN OPPOSITION OF DEFENDANT WILLIE EVA BALDWIN'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, the Plaintiff, by and through his counsel of record and files with this Honorable Court this Brief in Opposition of Defendant Willie Eva Baldwin's Motion for Summary Judgment.

### FACTUAL SUMMARY

This lawsuit stems from an automobile accident which occurred on July 27, 2007 in Montgomery, Alabama, on Interstate 85 (hereafter referred to as I-85) near the Day Street exit. Irena Johnson, deceased, was a passenger in the vehicle with her sister Defendant Willie Eva Baldwin, when Defendant Baldwin suddenly backed up into oncoming traffic on the busy interstate, causing a collision with former Defendant Denita Colvin. As a result of said collision, Irena Johnson was killed.

Plaintiff, Robert Johnson, as Personal Representative of his mother's estate, sued Defendants Baldwin and Denita Colvin. Plaintiff Johnson has always maintained that Irena Johnson's status while riding in the automobile with Defendant Baldwin was that of either a guest or passenger. After extensive discovery, Plaintiff settled his claims against Denita Colvin and moved this Honorable Court for leave to amend his Second Amended

Complaint to clarify facts obtained through discovery and to add additional claims of negligence and gross negligence against Defendant Baldwin. The undisputed facts of the conduct made the basis of this lawsuit are as follows:

Each year since the 1940's, Defendant Baldwin and her two sisters, Irena Johnson and Ella Prather, traveled from Philadelphia, Pennsylvania to Georgia to visit family and friends. (Baldwin depo. p. 43, lines 16-20; p. 103, lines 16-23; p. 104, lines 1-11). Irena Johnson and Defendant Baldwin planned their 2007 trip through AAA and Irena Johnson paid for her own airline tickets while Defendant Baldwin took care of all the expenses for Ella Prather. (Baldwin depo. p. 50, lines 11-16) According to Defendant Baldwin, Irena Johnson also assisted with the rental car expenses. (Baldwin depo. p. 59, lines 11-14)

On July 26, 2007 the three (3) sisters flew from Philadelphia to Atlanta, Georgia. Upon arrival, Defendant Baldwin rented a 2007 Hyundai Sonata from Hertz Rental Car Company (a/k/a Hertz Global Holdings, Inc.) at the Hartsfield-Jackson International Airport in Atlanta. (Exhibit B - Baldwin depo. p 58, lines 7-8). At all material times thereto, Plaintiff's mother, Irena Johnson, deceased, was a passenger in the vehicle driven by Defendant Baldwin. (Exhibit A – Plaintiff's Second Amended Complaint; Baldwin depo. p. 105, lines 16-18). On July 27, 2007, while driving to Cuthbert, Georgia, Defendant Baldwin got lost and began traveling on I-85 South and subsequently ended up in Montgomery, Alabama near the I-65 interchange. (Baldwin depo. p. 67, lines 19-22).

Witnesses state that Defendant Baldwin was traveling west on I-85 South in the Day Street exit lane near the I-65 interchange when she suddenly started backing up into oncoming traffic on I-85. (Exhibit C – Plaintiff's Exhibit 4 attached to the deposition of Robert Johnson). Defendant Baldwin testified that when she was backing up, she thought

she was on the right edge of the interstate. (Baldwin depo. p. 168, lines 11-23; p. 169, lines 1-6; p. 89, lines 7-17). However, Defendant Baldwin also consistently testified that she backed up in the middle of the lane and her own drawings on photographic exhibits are in serious conflict with her assertion that she thought she was on the right edge of the interstate. (Baldwin depo. p. 80, lines 11-22; p. 83, lines 17-23; p. 84, lines 1-6; Plaintiff's Exhibits 49, 50, and 55). Denita Colvin, also traveling west on I-85, collided into the rear of Defendant Baldwin's vehicle in which Irena Johnson, deceased, was a passenger. (Exhibit C – Plaintiff's Exhibit 4). Corporal G.E. Caffey, lead accident investigator for the Montgomery Police Department, concluded that Defendant Baldwin was the sole contributing cause of the accident. (Exhibit C – Plaintiff's Exhibit 4).

Mrs. Baldwin agreed in her deposition that backing up in a highway lane that is used to travel on would be "worse than dangerous" and that injury or death might very well occur. (Baldwin depo. p. 90, lines 4-7, 8-12; Defendant Baldwin's Brief in Support of Motion for Summary Judgment). As a proximate result of the negligent, gross negligent, and wanton conduct of Defendant Baldwin, Plaintiff's mother, Irena Johnson, was killed. Plaintiff brings this wrongful death action pursuant to § 6-5-410 of the Code of Alabama. (Exhibit A).

## STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

A motion for a summary judgment is warranted only when there is no genuine issue of material fact such that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), *Ala. R. Civ. P.* When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. *McClendon v. Mountain*

*Top Indoor Flea Market, Inc.*, 601 So. 2d 957, 958 (Ala. 1992). Evidence is considered "substantial" if it is of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. *West v. Founders Life Assurance Co. of Florida,* 547 So. 2d 870, 871 (Ala. 1989). Further, the evidence is viewed in the light most favorable to the nonmoving party. *Hobson v. American Cast Iron Pipe*, 690 So. 2d 341 (Ala. 1997).

## WHETHER OR NOT THE ALABAMA GUEST STATUTE IS APPLICABLE IN THIS CASE IS A QUESTION OF FACT FOR THE JURY

Defendant Baldwin "assumes" in her Brief in Support of Motion for Summary Judgment that Plaintiff concedes the fact that the Guest Statute, *Ala. Code* §32-1-2 (1975) is applicable "on the ground that it is undisputed that Defendant Baldwin was not in any way motivated by a contribution from her sisters toward the trip expenses when she drove them to visit their relatives in Georgia." (Defendant Baldwin's Brief in Support of Motion for Summary Judgment p. 4, line 6; p. 5 lines 1-3). Such assumption is not only mistaken but is not supported by any evidence.

In his Complaint, as amended, Plaintiff asserts throughout said pleading that his deceased mother was a guest or passenger. (*See* ¶¶ 8, 11, 17, 23, and 30 of Plaintiff's Complaint hereto attached as Exhibit A).[1] Nowhere in his Complaint is there any mention of a concession to the Alabama Guest Statute or that it is applicable because Defendant Baldwin was not motivated by monetary contribution of the trip expenses. Furthermore, monetary contribution is not the only variable used to determine whether one riding in the automobile with a negligent or wanton driver is that of guest or passenger.

---

[1] Notwithstanding that the Plaintiff has filed motion for leave to amend his Second Amended Complaint asserting that the status of his deceased mother was that of a passenger, adding claims for negligence and gross negligence.

The statute does not define the word "guest"; therefore, the courts must look to case law. In *Wagnon v. Patterson,* 70 So.2d 244 (1954), the Alabama Supreme Court stated as follows:

> The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, goodwill or the like, on the person furnishing the transportation, the rider is a guest; **but if his carriage tends to promote the mutual interest of both himself and [the] driver for their common benefit, thus creating a joint business relationship between the motorist and his rider**, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, **the rider is a passenger and not a guest.** (Emphasis added)

In *Cash v. Caldwell*, 603 So. 2d 1001 (Ala. 1992), Evelyn Cash was injured when the car her sister-in-law, Mary Caldwell, was driving spun out of control and hit a telephone pole. Evelyn and her husband Richard were traveling cross country in their mobile home. *Cash*, 603 So. 2d 1001, 1002. While they were in Texas, Mary called and asked them to come to Birmingham immediately because Richard and Mary's mother's condition was worsening and she needed help taking care of her. *Id.* Once in Birmingham, the Cashes assisted in getting the ailing mother admitted into the hospital. *Id.* On the way home from the hospital, it began to rain and the Cashes and Caldwell were subsequently involved in an accident. *Id*.

Plaintiffs Evelyn and Richard Cash filed an action against defendant driver Mary Caldwell and sought damages based on personal injury and loss of consortium. *Id*. Caldwell subsequently filed a motion for summary judgment claiming that Evelyn Cash was a guest. *Id*. The trial judge concluded that both plaintiffs were "guests," that they had

no recovery based on negligence, and that plaintiffs had presented no evidence of wanton or willful conduct on the driver's part to defeat the motion for summary judgment. *Id.*

On review, plaintiffs argued that they were not barred from suing under the Alabama Guest Statute. *Id.* at 1003. The Supreme Court of Alabama held that the facts of *Cash* "would permit a fact-finder to conclude that the Cashes were promoting their own mutual interest and that of their sister and sister-in-law in caring for Richard and Mary's ailing mother." *Id.* The Alabama Supreme Court further held that it could not say, as a matter of law, that plaintiffs were "guests" within the meaning of the Guest Statute stating that the issue of whether plaintiffs were guests or passengers was a question for the jury, and that the question should not have been determined by the trial judge as a matter of law. *Id.* (*citing Roe v. Lewis*, 416 So. 2d 750 (Ala. 1982); *Sellers v. Sexton*, 576 So. 2d 172 (Ala. 1991)).

Likewise, it is clear from the deposition testimony of Defendant Baldwin that both she and Irena Johnson were promoting their own mutual interests when they traveled from Philadelphia to Georgia. In her deposition, Defendant Baldwin testified as follows:

(Baldwin depo. p. 48, lines 15-19).

> Q.    But when you-all went in to plan this trip, Ms. Johnson physically went in to AAA with you: is that correct?  She went to the location with you?
>
> A.    Oh, yes.

(Baldwin depo. p. 49, lines 5-7; lines 17-23; p. 50, lines 1-5; 11-13).

> Q.    So this wasn't a trip that you were making by yourself --
>
> A.    Uh-uh (negative response).

Q.      Who paid for the airline tickets?

A.      I think I did.  But Irena paid – gave me the money, hers.  But I paid for

Eloise and mine. But I paid for all of them as far as they are concerned.

Q.      Are you saying you paid for them on your credit card, and then they gave

you the money back?

A.      Who?

Q.      Irena.

A       No.  Yeah, she gave it to me before.

Q.      Did Irena pay for her own trip?

A.      Yes.  By plane, yes.

(Baldwin depo. p. 51, lines 10-16; p. 52, lines 2-6).

Q.      Let me ask you this.  What was the purpose of the trip?

A.      Just a visit to see the other part of the family.

Q.      Was that something that Irena wanted to do as well as Ella and as well as

you?

A.      Sure.

Q.      So would it be safe to say that Irena making the trip to Cuthbert (Georgia)

benefited her and also benefited you?   I mean, you-all were just traveling

together?

A.      Yeah.

(Baldwin depo. p. 103, lines 16-19, 23; p. 104, lines 1-11).

Q.      I think you testified yesterday that this is something you-all do every

single year, correct?

7

A.    Yes.

Q.    But now it's just all of the sisters come down and everybody just goes to

visit everybody?

A.    Right.

Q.    And that's something that Irena wanted to do; is that correct?

A.    Right.

Q.    Something that you wanted to do?

A.    Uh-huh (positive response).

Q.    And something that Ella wanted to do; is that correct?

A.    Right.

(Baldwin depo. p. 58, lines 15-16; p. 59, lines 11-14, 23; p. 60, lines 1-20).

Q.    Who paid for the rental car, Ms. Baldwin?

A.    I did.

Q.    Did anybody reimburse you?  Did Ms. Johnson give you some of the

money to help you take care of the eight hundred and ten dollars?

A.    I'm quite sure she did.

Q.    Why didn't you-all rent separate cars?

A.    We would have needed three drivers?

Q.    I didn't hear you.  What did you say?

A.    If we had rented three cars, we would have needed three drivers.

Q.    Okay.  So are you saying it was beneficial for you-all to just rent one car?

A.    Yes, rent one car and three of us get in it.

Q.    So it kind of helped everybody out in the situation, right?

A.    Right.

Q.    Ms. Johnson, it helped her out a little bit: is that correct?

A.    Uh-huh (positive response).

Q.    It helped you out a little bit as well, correct?

A.    Right.

Q.    And it also helped Ms. Prather out because y'all didn't have to rent separate cars; is that right?

A.    Right.

(Baldwin depo. p. 105, lines 16-18).

Q.    Ms. Baldwin, was Irena and Ella, were they passengers in the vehicle?

A.    Yes.

From the foregoing, it can be established that the trip taken by Mrs. Baldwin and her sisters allowed each sister the benefit of visiting with her family. The sisters traveled together because to do so prevented them from having to drive three separate cars, which would have made little sense because the sisters always went to the same place, namely Cuthbert, Georgia, to visit mutual family. It can not be said from her deposition testimony that Mrs. Baldwin drove the rental vehicle to confer a benefit only on the persons with whom she traveled. There is substantial evidence to support a finding that the rental vehicle was used to promote the mutual interest of both Mrs. Baldwin and Ms. Johnson for their common benefit.

Though the trip was for the mutual benefit of both sisters, it can also be deduced from the deposition testimony that there was an agreement between the sisters that Ms. Johnson would pre-pay a portion of the trip. Baldwin testified that Ms. Johnson paid her

a portion of the AAA costs prior to accompanying her to the AAA office. Baldwin also testified that although she paid for the plane tickets on her credit card, Ms. Johnson reimbursed her. Additionally, Baldwin testified that she was "quite sure" that Ms. Johnson assisted her with the cost of the rental car. These were all anticipated costs of the trip. Given that the sisters got lost during the drive to Cuthbert, Georgia, the hotel room was not an anticipated cost and therefore could not be included in any pre-trip arrangement the sisters made.

> **[W]here it appears that the agreement for transportation bears one or more of the indicia of a business arrangement, and especially where such arrangement is specifically for transportation**, or comprehends a trip of considerable magnitude, or contemplates repeated and more or less regular rides, **the person paying for** gasoline and oil consumed or other **automobile expenses is held to be a passenger and not a guest, and this is true even though the ultimate purpose of the arrangement may be for pleasure**. Each case involving the question must be decided on its own facts, and the important factor to determine is the intent of the parties. *Wagnon,* 70 So. 2d 244, 250 (Ala. 1954) *quoting* 60 C.J.S. Motor Vehicles § 399(5), p. 1015 (1969) (emphasis added).

Just as the Alabama Supreme Court in *Cash* could not say, as a matter of law, that the Cashes were "guests" within the meaning of the Guest Statute under the circumstances of that case, it cannot be said, as a matter of law, that Irena Johnson was a guest in the automobile with Defendant Baldwin such that the Guest Statute would preclude recovery. Therefore, whether or not Irena Johnson was a passenger because the trip and use of the rental vehicle clearly promoted her interest and the interest of Defendant Baldwin is a question for the jury, and that question should not be determined by the trial judge as a matter of law.

## DEFENDANT BALDWIN IS NOT ENTITLED TO
## SUMMARY JUDGMENT ON THE WANTONNESS COUNT

"Wantonness" is statutorily defined as conduct which is carried on with a reckless or conscious disregard of the rights or safety of others. *Ala. Code* 1975, § 6-11-20(6)(3). Wantonness has been defined by the Alabama Supreme Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Wilhite v. Webb*, 46 So. 2d 414, 416-417 (Ala. 1950). Knowledge need not be shown by direct proof; it may be made to appear, like any other fact, by showing circumstances from which the fact of actual knowledge is a legitimate inference. *Lankford v. Mong*, 214 So. 2d 301 (Ala. 1968); *See also Klaber v. Elliot*, 533 So. 2d 576 (Ala. 1988). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff; only that the actor is "conscious" that injury will likely or probably result from his actions. *Tolbert v. Goldsby*, 333 So. 2d 129, 131 (Ala. 1976).

"Conscious" has been defined as "perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception; having an awareness of one's own existence, sensations, and thoughts, and of one's environment; capable of complex response to environment; deliberate." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (*quoting Webster's New Collegiate Dictionary* 239 (1981) and *The American Heritage Dictionary of the English Language* 283 (1969), respectively). *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998); *See also Scott v. Villegas*, 723 So. 2d 642 (Ala. 1998).

Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger. *Tolbert,* 333 So. 2d 129, 131-132.  Furthermore, to constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone. *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988).  "Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand." *Godfrey v. Vinson*, 215 Ala. 166, 110 So. 13. (Ala. 1926).

In the case at bar, there exists substantial evidence from which a jury could find and/or infer wantonness on the part of Defendant Baldwin.  In her Brief in Support of Motion for Summary Judgment, Defendant Baldwin attempts to persuade this Honorable Court that she was merely negligent and truly believed that she was backing up on the side of the interstate, as opposed to backing up on a heavily traveled lane of the interstate. Not only is her deposition testimony in conflict with Plaintiff's Exhibits 4, 49, 50, and 55 and her drawings thereon, Ala. Code § 32-5A-51 (1975) states:

> (a) The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic, and
> (b) The driver of a vehicle shall not back the same upon any shoulder or roadway of any controlled-access highway.

Therefore, it matters not on which part of the heavily traveled interstate Defendant Baldwin thought she was backing up; her deposition testimony constitutes an admission of her conduct.  In her deposition, Defendant Baldwin states as follows:

(Baldwin depo. p. 76, lines 8-17; p. 77, lines 1-4).

> Q.    Now, let me ask you this question.  When you were driving on 85 getting ready to turn around, did you notice any other vehicles on the interstate, any other cars that were driving alongside you, ahead of you?

A.    They couldn't drive beside me because I was going up this ramp to where one car could only go through.  And as I was going up that ramp to go through that one door, a car behind came and hit me.

Q.    Were there any other vehicles on the interstate that you were driving on?

A.    It wasn't on the interstate.  I was before.  Yeah, it was a lot of cars.

(Baldwin depo. p. 80, lines 8-23; p. 81, lines 1-4).

Q.    Now, you saw where [the accident report] said witnesses advised that you were backing up on the interstate.  Would that be incorrect?

A.    That's incorrect.  We went – well, a long time before that since it seemed that all I saw was going further into Alabama.  But there was that ramp I saw, so I did back up on, you know, the regular highway until I could make the – it would be a left-hand turn to get on this ramp to go up and go through that little door.

Q.    So at some point you did back up on the highway to try to catch the ramp.  Is that what you are testifying to?

A.    Yes.

Q.    And that was because you – Was that because you were too far in Alabama, and you didn't want to go that far?

A.    Right. Had been to Florida.  Didn't want to go further into Alabama.

(Baldwin depo. p. 83, lines 17-23; p. 84, lines 1-6).

Q.    Where did you back up at and try to…

A.    Down in the highway.

Q.    You were in the highway when you backed up?

13

A.      Yeah.

Q.      And did you actually put your vehicle in reverse and start backing up to try to catch that exit?

A.      Yes.  I stood there until it was safe for me to back up, you know, and go to my right to get to that.

Q.      And that was in the highway that you did that, that you backed up?

A.      Right.

(Baldwin depo. p. 88, lines 6-11, 21-23).

Q.      Do you think it's safe to stop in the highway and back up?

A.      Yes.

Q.      You think it is safe to do that?

A.      If you don't see anyplace of pulling off to your right.

Q.      That's fine.  But if you were in the highway and you – not in that space you are talking about, but if you were in the highway?

(Baldwin depo. p. 89, lines 1-6).

A.      Oh, no. Never back up there.

Q.      Is that dangerous?

A.      Sure.

Q.      What do you think would happen if you did that?

A.      They would kill everybody in that front car.

(Baldwin depo. p. 90, lines 4-12).

Q.      So would it be safe to say that if you were in the highway, the lane that you do drive on and you back up, that would be dangerous?

A.     Worse than dangerous.

Q.     And would it be safe to say if someone backed up in that lane that you

        drive in with oncoming traffic, that injury or death might very well

        happen?

A.     It sure would.

(Baldwin depo. p. 116, lines 8-13; p. 117, lines 2-10; Plaintiff's Exhibit 49).

Q.     …Take a look at Plaintiff's Exhibit Number Forty-nine.  Does that appear

        to be the area that you were traveling in Montgomery on July 27th?

A.     Yes.

Q.     …Do you remember whether or not you were traveling on that road on

        July 27th of 2007?

A.     Yes.

Q.     You were?

A.     Yes.

Q.     So does that picture fairly and accurately depict the scene as you

        remember on July 27, 2007?

A.     Yes.  See, you drive up here.  And to turn around, only one could go

        through there to turn around.

(Baldwin depo. p. 119, lines 19-23; p. 120, lines 1-2).

Q.     And I represent to you that Ms. Baldwin just drew a red line with a red

        Sharpie marker indicating the lane that she was driving. And I indicate

        that Ms. Baldwin just drew a second red line.  What's the purpose of the

        second red line?

15

A.      This is where I was traveling.

(Baldwin depo. p. 121, lines 14-20; p. 122, lines 21-23; p. 123, lines 1-10; Plaintiff's Exhibit 50).

Q.      I'm going to show you what's been marked as Plaintiff's Exhibit Number Fifty. And it's similar to this photograph on Forty-nine. And can you look up now and tell me if you see the door? Can you tell me if you see the door that you are referring to?

Q.      On that document it appears you drew a door; is that correct?

A.      Right.

Q.      Where you say the door should be?

A.      Yes.

Q.      Are you saying, Ms. Baldwin, the lane that you just drew on this photograph, is that the lane that you were driving in?

A.      Yes.

Q.      And you drew that in red?

A.      There is only one lane.

Q.      In red marker, right?

A.      Right.

(Baldwin depo. p. 123, lines 11-16, 22-23; p. 124, lines 1-11; Plaintiff's Exhibit 55).

Q.      Let me show you this document I'm going to represent to you as Plaintiff's Exhibit Number Fifty-five. Can you look on that document and tell me if you see any letters written in the straight – in the roadway.

A.      No.

Q.     What I'm looking for is for you to look at that image right there and see if you see where somebody wrote three letters POI in the road. Do you see it?

A.     Yes, I see that.

Q.     Can you circle that for me with that red marker?

A.     Okay.

Q.     And I'm going to represent to you, Ms. Baldwin, that POI means point of impact. Is it possible that you were driving in that lane when the collision occurred?

A.     I guess so. It wasn't but one lane there.

(Baldwin depo. p. 130, lines 12-14).

Q.     And to get on the ramp, would you have had to back up to get on that ramp?

A.     Yes, I would.

(Baldwin depo. p. 154, lines 5-12).

Q.     What was the purpose of backing up at some point in time before you say you got on the ramp?

A.     Because it seemed that I was just going to go on and go on to Alabama.

Q.     When you backed up, did you turn right or left to get where you wanted to go?

A.     No.

There is substantial evidence that Defendant Baldwin was conscious and aware of the fact that she was backing up on the highway and that she was aware that such conduct

was likely to cause injury or death. Despite having knowledge of these facts, Defendant Baldwin stopped the vehicle she was driving in the middle of an interstate that she admits was busy, put her car in reverse, and proceeded to back up. As a direct result of her conduct, Ms. Johnson was killed.

In *Barker v. Towns*, 747 So. 2d 907, 908 (Ala. 1999), Barker sued defendant, personal representative of Towns, the driver of the vehicle in which Barker was a passenger. Towns died as a result of injuries sustained in the accident. Barker alleged that Towns had been wanton and had displayed a reckless disregard for safety in failing to yield the right of way. *Barker*, 747 So. 2d 907, 908. Defendant moved for summary judgment, arguing Barker had been a guest in Towns' car at the time of the accident, and any claim for negligence was barred under Alabama's Guest Statute, *Ala. Code* § 32-1-2 (1975). Defendant alleged that there was no evidence that Towns was guilty of wantonness in his driving. *Id.* The trial court entered a judgment in favor of Defendant, and Barker appealed. *Id.* The Alabama Supreme Court held that Barker had presented substantial evidence to support a finding of willful or wanton misconduct by Towns, and summary judgment for Defendant under the Alabama Guest Statute was not justified. *Id.* at 909.

Barker presented evidence tending to show that Towns entered the intersection after seeing the truck approaching at a high rate of speed. *Id.* at 908. In addition, a truck driver testified that he did not see Towns stop at the stop sign, and there is no dispute that the truck driver had the right-of-way. *Id.* These facts constituted substantial evidence supporting the wantonness claim; therefore, the issue should have been presented to the

jury. *Id.* at 909.  The Alabama Supreme Court reversed the judgment and remanded the case for further proceedings. *Id.*

As did the driver in *Barker*, Defendant Baldwin also clearly ignored the apparent dangers in her actions. After becoming aware that the interstate was busy, Defendant Baldwin chose to come to a complete stop.  Despite being conscious that backing up on the interstate could cause injury or death, Defendant Baldwin admits that she then put her vehicle in reverse and witnesses corroborate her own testimony that she did indeed back up.  There is no dispute that this was an illegal maneuver upon the interstate or that Defendant Baldwin's actions were the sole and proximate cause of the accident.  These facts constitute substantial evidence supporting the wantonness claim creating a genuine issue of material fact and thus, the issue of wantonness should be submitted to the jury.

Defendant Baldwin relies heavily on *Ex Parte Essary*, 2007Ala. Lexis 237 in her Motion for Summary Judgment for the proposition that when considering whether a defendant's actions are wanton the court expects that an individual will not engage in self-destructive behavior.  The case at bar differs substantially from *Essary*.  Underlying the courts decision that *Essary* acted without wantonness was the belief that "absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior."  *Ex Parte Essary*, 2007 Ala. Lexis 237 at 15 (Ala. 2007).

The deposition of Defendant Baldwin is filled with evidence of her impaired judgment on the date of the accident: (1) the fact that Defendant continually refers to a left turn "door" that is in the middle of the highway (Baldwin depo. p. 76, lines 13-17; p. 78, lines 13-15; p. 80, lines 11-18); (2) the fact that Defendant Baldwin states that she

"made the ramp" that she saw on the highway (Baldwin depo. p. 155, lines 1-7); (3) the fact that Defendant Baldwin got lost in Georgia and Florida and ended up in Alabama (Baldwin depo. p. 67, lines 19-23; p. 68, lines 1-23; p. 69, lines 7-15); and (4) the fact that Defendant Baldwin has been diagnosed with Dementia, a fact unknown to Irena Johnson.  (Baldwin depo. p. 140, lines 10-20; p. 138, lines 3-23; p. 139, lines 1-8)

Defendant Baldwin backing up on any portion of a busy interstate is behavior so inherently reckless as would impute to her a "depravity consistent with disregard of instinct of safety and self-preservation." *Ex Parte Essary*, 2007 Ala. Lexis 237 at 15.

In considering the question of the sufficiency of the evidence of wantonness to be submitted to the jury, the court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury is free to draw from the evidence.  *Jackson v. Cook,* 275 Ala. 151, 153 So. 2d 229 (1963). A wantonness count should go to the jury if there is any evidence to support a finding of wantonness. *See Kilcrease v. Harris,* 288 Ala. 245, 259 So. 2d 797 (1972).  The Alabama Supreme Court has further stated that "if there is any evidence from which a jury can reasonably infer wantonness, the issue should be presented to the jury." *Sellers v. Sexton*, 576 So. 2d 172, 175 (Ala. 1991) (*citing McDougle v. Shaddrix*, 534 So. 2d 228 (Ala. 1988); *See also Clark v. Black*, 630 So. 2d 1012 (Ala. 1993).

## <u>CONCLUSION</u>

It is clear that genuine issues of material fact exist as to whether or not the deceased, Irena Johnson, was, in fact, a passenger and not a guest and such a question should be left for determination by the ultimate triers of fact. Although there is substantial evidence that Irena Johnson not only paid for her own expenses for the trip

while Defendant Baldwin paid for all expenses for the other traveling sister, Ella Prather, that fact, in and of itself, is not the only factor to consider when the status of an injured or killed rider is in dispute.

It is clear from the deposition of Defendant Baldwin that the trip and use of the rental car was mutually beneficial to all the sisters. The trip was one that was planned by Irena and Defendant Baldwin to visit family members for their own mutual interests. Therefore, like the Cashes, the promotion of both Defendant Baldwin and Irena Johnson's own mutual interests creates a jury question regarding Ms. Johnson's status of passenger or guest under the Guest Statute.

Furthermore, assuming the status of Irena Johnson is that of a guest and not a passenger, Plaintiff has produced substantial evidence from which a jury could infer wantonness on the part of Defendant Baldwin. Defendant Baldwin admits that she backed up on the interstate into oncoming traffic and that she knew it was "worse than dangerous" to do so such that "everybody in the front car would be killed." Her own testimony and illustrations are in conflict with regards to where she backed up which, when viewed in a light most favorable to the Plaintiff, creates a genuine issue of material fact such that she should not be entitled to a judgment as a matter of law.

**WHEREFORE**, the Plaintiff prays that this Honorable Court **DENY** Defendant Baldwin's Motion for Summary Judgment and submit his claims to the ultimate triers of fact.

Respectfully submitted this the 15th day of August, 2008.

*/s/ Zachary T. Collins*
_____
ZACHARY T. COLLINS (COL126)
Attorney for the Plaintiff

**OF COUNSEL:**
ZACHARY T. COLLINS, ATTORNEY AT LAW, LLC
318 N. Decatur Street
Montgomery, Alabama 36104
Tel: 334-263-5575
Fax: 334-263-5569

## CERTIFICATE OF SERVICE

I, Zachary T. Collins, certify that on the  15th day of August, 2008, the foregoing document was served on counsel/adverse party listed below, properly addressed and pre-paid, in the following manner:

(  ) Facsimile;
(  ) Facsimile, original to follow by United States mail, first class, properly addressed;
(  ) United States mail, first class, properly addressed;
(  ) United States mail, Express Mail delivery;
(  ) Federal Express, overnight delivery;
(  ) United Parcel Service, overnight delivery;
(  ) Hand delivery;
(X) CM/ECF

OF COUNSEL:

**DAVID H. HENDERSON (ASB-4048-D57H)**
**RANDALL MORGAN (ASB-8650-R70R)**
Attorneys for Defendant Willie Eva Baldwin
Hill, Hill, Carter, Franco, Cole & Black, P.C.
P.O. Box 116
Montgomery, AL 36101-0116

**J. LENN RYALS, ESQ.**
Attorneys for Defendant Willie Eva Baldwin
**RYALS, PLUMMER, DONALDSON**
        **AGRICOLA & SMITH, P.C.**
60 Commerce Street, Ste. 1400
Montgomery, Alabama 36104

*/s/ Zachary T. Collins*
_____
**OF COUNSEL**