IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

ROBERT JOHNSON, as personal )
representative for the ESTATE OF )
IRENA JOHNSON, ) CASE NO.: 2:07cv1068-MHT
)
Plaintiff, ) COMPLAINT AND DEMAND
) FOR JURY TRIAL
v. )
)
DENITA COLVIN; WILLIE EVA BALDWIN; )
and ACE AMERICAN INSURANCE )
COMPANY, et al. )
)
Defendants. )

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, Robert Johnson, as personal representative of the Estate of Irena Johnson, deceased, and for his complaint against Defendants and states the following:

### STATEMENT OF PARTIES

1. Plaintiff, Robert Johnson, is an individual over the age of nineteen (19) years and is the legal representative to the Estate of Irena Johnson. At the time of her death, Irena Johnson, deceased, was a resident citizen of Philadelphia County, in the Commonwealth of Pennsylvania. The estate of the decedent was established in Philadelphia County, Pennsylvania. **(See Exhibit A)** Pursuant 28 U.S.C. § 1332 (c)(2), the Plaintiff is deemed a citizen of Philadelphia County in the Commonwealth of Pennsylvania.

2. Defendant, Denita Colvin, (hereafter "COLVIN") is an individual over the age of nineteen (19) years and a resident citizen of Montgomery County, Alabama.

EXHIBIT A

3. Defendant, Willie Eva Baldwin, (hereafter "BALDWIN") is an individual over the age of nineteen (19) years and resident citizen of Henry County, Georgia.

4. Defendant, ACE American Insurance Company, (hereafter "ACE") is a Pennsylvania corporation doing business by agent in the State of Alabama at large. The principal address for this Defendant is 436 Walnut Street, Philadelphia, PA 19106.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and § 1337 as the Plaintiff's claims involve an amount in excess of $75,000; are between citizens of different States; and are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy, those supplemental claims not being inconsistent with the jurisdictional requirements of § 1332.

6. Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 18 U.S.C. § 1391 in that the conduct, acts, or omissions giving rise to this litigation occurred in Montgomery County, Alabama.

## FACTUAL ALLEGATIONS

7. On July 27, 2007, Defendant Baldwin rented a 2007 Hyundai Sonata from Hertz Rental Car Company (a/k/a Hertz Global Holdings, Inc.) at the Hartsfield-Jackson International Airport in Atlanta, Georgia.

8. At all material times thereto, Plaintiff's mother, Irena Johnson, deceased, was a guest and/or passenger in the vehicle driven by Defendant Baldwin.

2

9. Defendant Baldwin got lost in the Atlanta area and began traveling on Interstate 85 south and subsequently ended up in Montgomery, Alabama near the Interstate 65 interchange.

10. According to information and belief, witnesses advised that Defendant Baldwin was traveling west on I-85 South in the right lane when she suddenly started backing up into oncoming traffic on I-85.

11. Defendant Colvin, also traveling west on I-85, collided into the rear of Defendant Baldwin, the vehicle in which Irena Johnson, deceased, was a guest and/or passenger.

12. Defendant Colvin, at all times relevant to this cause of action, was in violation of § 32-5A-191 of the Code of Alabama when she drove or otherwise exercised actual physical control of a vehicle while having a blood alcohol content (hereafter BAC) of .11 percent, and she subsequently pled guilty to a charge of DUI in the Municipal Court of Montgomery County, Alabama.

13. As a proximate result of the collision by and between Defendants Colvin and Baldwin, Plaintiff's mother, Irena Johnson, was killed.

14. Plaintiff brings this wrongful death action pursuant to § 6-5-410 of the Code of Alabama.

## COUNT ONE
### [Wrongful Death – Negligence]

15. Plaintiff hereby incorporates by reference, as is fully set forth herein, each and every allegation contained in paragraphs 1 through 14, inclusive, of this Complaint.

16. Defendant Colvin acted negligently by driving or otherwise exercising actual physical control of a vehicle while having a BAC of .11 percent in violation of § 32-5A-191 of the Code of Alabama.

17. Defendant Colvin acted negligently by operating her vehicle on a busy public interstate while having a BAC of .11 percent. Such conduct constitutes a failure to exercise ordinary and reasonable care while on the roadways of Alabama. At all material times thereto, Defendant Colvin had the last clear chance to avoid the collision with the vehicle in which Irena Johnson, deceased, was a guest and/or passenger, to wit: the vehicle driven by Defendant Baldwin, in which Irena Johnson was a passenger and/or guest, was in a perilous position; Defendant Colvin knew or, upon the exercise of due diligence, should have known that the vehicle driven by Defendant Baldwin was in a perilous position; that armed with such knowledge Defendant Colvin failed to use reasonable and ordinary care in avoiding the collision; that with the use of ordinary and reasonable care Defendant Colvin could have avoided the collision; and that Plaintiff's mother, Irena Johnson, was killed as a result of the collision by and between Defendants Colvin and Baldwin.

18. At all times material thereto, Defendant Colvin had a duty to drive in a reasonably safe manner while traveling upon the roadways of Alabama, to wit: by not driving or otherwise exercising actual physical control of a vehicle with a BAC of .08 percent or more pursuant to § 32-5A-191 of the Code of Alabama.

19. Defendant Colvin breached that duty when she drove and otherwise exercised actual physical control of a vehicle while having a BAC of .11 percent, such violation constituting negligence *per se*.

20.     As a proximate consequence of Defendant Colvin's conduct, Plaintiff's mother, Irena Johnson, was killed.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant Colvin in an amount of Punitive and Exemplary damages as awarded by a struck jury.

## COUNT TWO
### [Wrongful Death – Gross Negligence]

21.     Plaintiff hereby incorporates by reference, as is fully set forth herein, each and every allegation contained in paragraphs 1 through 20, inclusive, of this Complaint.

22.     Defendant Colvin acted with gross negligence by driving or otherwise exercising actual physical control of a vehicle while having a BAC of .11 percent.

23.     Notwithstanding any allegation of sudden emergency, Defendant Colvin had the last clear chance to avoid the collision with the vehicle in which Irena Johnson, deceased, was a guest and/or passenger, to wit: the vehicle driven by Defendant Baldwin, in which Irena Johnson was a passenger and/or guest, was in a perilous position; Defendant Colvin, knew or, upon the exercise of due diligence, should have known that the car driven by Defendant Baldwin was in a perilous position; that armed with such knowledge Defendant Colvin failed to use reasonable and ordinary care in avoiding the collision; that with the use of ordinary and reasonable care Defendant Colvin could have avoided the collision; and that Plaintiff's mother, Irena Johnson, was killed as a result of the collision by and between Defendants Colvin and Baldwin.

24.     At all times material thereto, Defendant Colvin had a duty to drive in a reasonably safe manner while traveling upon the roadways of Alabama, to wit: by not driving while voluntarily intoxicated such that she was mentally and physically impaired.

5

25. Defendant Colvin breached that duty when she operated her vehicle upon a busy interstate with a BAC of .11 percent.

26. As a proximate consequence of Defendant Colvin's conduct, Plaintiff's mother, Irena Johnson, was killed.

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant Colvin in an amount of Punitive and Exemplary damages as awarded by a struck jury.

### COUNT THREE
### [Wrongful Death – Wantonness]

27. Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraph 1-26, inclusive, of this Complaint.

28. Defendant Baldwin acted intentionally, with wantonness, and with extreme recklessness and disregard for the safety of others by backing into oncoming traffic upon the interstate highways with reckless indifference to the knowledge that such act would likely or probably result in injury and/or death.

29. Defendant Colvin acted intentionally, with wantonness, and with extreme recklessness and disregard for the safety of others by driving or otherwise exercising actual physical control of a vehicle while having a BAC of .11 percent with reckless indifference to the knowledge that such act would likely or probably result in injury and/or death.

30. Notwithstanding any allegation of sudden emergency, Defendant Colvin had the last clear chance to avoid the collision with the vehicle in which Irena Johnson, deceased, was a guest and/or passenger, to wit: the vehicle driven by Defendant Baldwin, in which Irena Johnson was a passenger and/or guest, was in a perilous position;

Defendant Colvin, knew or, upon the exercise of due diligence, should have known that the vehicle driven by Defendant Baldwin was in a perilous position; that armed with such knowledge Defendant Colvin failed to use reasonable and ordinary care in avoiding the collision; that with the use of ordinary and reasonable care Defendant Colvin could have avoided the collision; and that Plaintiff's mother, Irena Johnson, was killed as a result of the collision by and between Defendants Colvin and Baldwin.

31. As a proximate consequence of Defendants' conduct, Plaintiff's mother, Irena Johnson, was killed.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants in an amount of Punitive and Exemplary damages as awarded by a struck jury.

## COUNT FOUR
### [Breach of Contract - Underinsured Motorist Coverage]

32. Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraph 1-31, inclusive, of this Complaint.

33. At all times material thereto, the rental car owned by Hertz and driven by Defendant Baldwin was covered by an excess rental liability policy underwritten by ACE American Insurance Company (hereinafter referred to as "ACE"). **(See Exhibit B – Excess Rental Liability Policy)** Additionally, the acts and/or omissions giving rise to this wrongful death action occurred during the rental period and within the policy territory governed by the excess policy.

34. Irena Johnson, decedent, was an insured on the excess rental liability policy issued to Hertz Global Holdings, Inc. during the rental period covered by said policy.

35. The excess liability policy defines an "insured" as "...any person **Occupying** the **Automobile** with the permission of the **Authorized Driver** who is entitled to coverage under any applicable Uninsured or Underinsured Motorist Legal Statute..."

36. At all times material thereto, Defendant, Willie Eva Baldwin was an authorized driver of the rental car owned by Hertz subject to the excess rental liability policy during the rental period.

37. The excess rental liability policy provides, in part, Underinsured Motorist Coverage limits of the difference between the minimum limits protection required by statute to be provided by the underlying statute and a maximum of $100,000 for each accident. The Plaintiff, on behalf of the estate of Irena Johnson, is legally entitled to recover punitive damages arising out of this underinsured motorist claim.

38. Under the excess rental liability policy, ACE agreed to pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle in excess of those payable under the terms of underlying protection. The damages must result from bodily injury and (a) must exceed the amount of the minimum coverage limits required for such coverage in the state the automobile is principally garaged and (b) be sustained by the Insured as a result of an accident involving an automobile that takes place during the term of the rental agreement and within the policy territory.

39. At the time of the accident, the automobiles being operated by the defendants Baldwin and Colvin were underinsured, in that any insurance in force on their vehicles did not and does not provide adequate coverage for the claims and damages asserted by the Plaintiff on behalf of the estate of the deceased, Irena Johnson.

40. The deceased insured has otherwise complied with the terms of the contract with the Defendant ACE and is entitled to be paid by ACE any and all damages sustained by the deceased resulting form the negligence, gross negligence, or wantonness of the defendants.

41. The Defendant ACE has breached its contract with the estate of the deceased insured by failing to make any payments to the decedent's estate under the underinsured motorist provision of the policy.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants in the amount of $100,000 as punitive damages for breach of contract, plus attorney's fees and costs.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Respectfully Submitted, this the 7th day of February, 2008.

/s/ Zachary T. Collins
/s/ Tonya D. Powell
_____
Zachary T. Collins
Tonya D. Powell
Attorneys for Plaintiff

**OF COUNSEL:**
ZACHARY T. COLLINS, ATTORNEY AT LAW, LLC.
207 Montgomery Street, Suite 215
Montgomery, AL 36104
(334) 263-5575
(334) 263-5569

**TO BE SERVED BY CERTIFIED MAIL**
**ON ACE AMERICAN INSURANCE COMPANY AT:**

ACE American Insurance Company
436 Walnut Street
Philadelphia, PA 19106-3703

## CERTIFICATE OF SERVICE

I, Zachary T. Collins, certify that on the 7th day of February, 2008, the foregoing document was served on counsel/adverse party listed below, properly addressed and pre-paid, in the following manner:

( ) Facsimile;
( ) Facsimile, original to follow by United States mail, first class, properly addressed;
( ) United States mail, first class, properly addressed;
( ) United States mail, Express Mail delivery;
( ) Federal Express, overnight delivery;
( ) United Parcel Service, overnight delivery;
( ) Hand delivery;
(X) CM/ECF

OF COUNSEL:

**DAVID H. HENDERSON (ASB-4048-D57H)**
**RANDALL MORGAN (ASB-8650-R70R)**
Attorneys for Defendant Willie Eva Baldwin
Hill, Hill, Carter, Franco, Cole & Black, P.C.
P.O. Box 116
Montgomery, AL 36101-0116

**W. CHRISTOPHER WALLER, JR. (WAL187)**
**JAMES A. RIVES (RIV005)**
Attorneys for Defendant Denita Colvin
**BALL, BALL, MATTHEWS & NOVAK, P.A.**
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, AL 36102-2148
Telephone (334) 387-7680
Facsimile (334) 387-3222

/s/ Zachary T. Collins
_____
OF COUNSEL

File #: A4548-2007

**Commonwealth of Pennsylvania** } ss.
**County of Philadelphia**

I, RONALD R. DONATUCCI, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania.

DO HEREBY CERTIFY AND MAKE KNOWN That on the __17th__ day of __October__ in the year of our Lord __2007__ LETTERS OF ADMINISTRATION on the Estate of __Irena Johnson__

__(AKA: Irene Johnson)__

deceased, were granted unto __Robert Johnson__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Given under my hand and seal of office,

Date of Death __7/27/2007__ this __17th__ day of __October__ A.D. 20 __07__

_Domenic Dinella_
Deputy Register

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 1/00)

PLAINTIFF'S EXHIBIT
A



ACE American Insurance Company
436 Walnut Street
Philadelphia, PA 19106-3703
800-523-9254

# Excess Rental Liability Policy

## DECLARATIONS

| | |
|---|---|
| Policy Number: | CGO G23723463 |
| Broker Name: | Willis of New Jersey |
| Address: | 25 B Vreeland Road, Florham Park, NJ |

**ITEM 1:** NAMED INSURED:
Hertz Global Holdings, Inc.

**ITEM 2:** NAMED INSURED ADDRESS:
225 Brae Boulevard
Park Ridge, NJ 07656

**ITEM 3:** INSURED:

The following are "Insureds":

1. those persons renting an **Automobile** from the **Named Insured** who have agreed in writing to accept **Liability Insurance Supplement** for an additional daily charge as shown in the **Rental Agreement**,

2. any authorized driver of the **Automobile** described in the **Rental Agreement** during the time period the **Automobile** is rented to the person(s) described in 1 above,

3. any person Occupying the **Automobile** with the permission of the **Authorized Driver** who is entitled to coverage under any applicable Uninsured or Underinsured Motorist Legal Statute, and

4. the **Named Insured**.

**ITEM 4:** POLICY PERIOD:
Effective Date: 01/01/2007    12:01 a.m.
Expiration Date: 01/01/2008   12:01 a.m.

**ITEM 5:** SCHEDULE OF UNDERLYING PROTECTION
Limits of Protection as shown in the **Rental Agreement**.

**ITEM 6:** LIMITS OF LIABILITY (EACH ACCIDENT)

1. **Bodily Injury and Property Damage Combined Single Limit:**

   The difference between the Limits of Protection shown in Rental Agreement in the state in which the accident occurs and a combined single limit of $1,000,000 each occurrence for Bodily Injury (including death) and Property Damage.

2. **Uninsured and Underinsured Motorist Coverage (if applicable) Combined Single Limit:**

   If this Policy applies to damages which the **Insured** is entitled to collect under the terms of any uninsured or underinsured motorist law, the Limit of Liability shall be the difference between the minimum limits required by statute to be provided by the **Underlying Protection** and a maximum of $100,000 each accident.

PLAINTIFF'S EXHIBIT B (Blumberg No. 5113)

DA-5Z90a (02/06)

ITEM 7:    **POLICY PREMIUM:**

Advance Premium (Due at Inception):  Subject to Monthly Reports

Premium Computation:

Subject to monthly reports and audits, the Premium shall be computed at a rate of $ __11.95__ per **Insured** described in paragraph 1 of item 3 above times the number of days in the "Rental Period".

_____          _____
Date                               Countersigned By Authorized Signature

POLICY NUMBER: CGO G23723463

ACE American Insurance Company
1601 Chestnut Street
Philadelphia, PA 19101-1484

# Excess Rental Liability Policy

| Policy Number: | CGO G23723463 |
|---|---|

I. **INSURING AGREEMENTS**

In consideration of the payment of the Premium as specified in the Declarations and subject to all the terms of this Policy, the **Company** agrees with the **Named Insured** as follows:

A. Excess Liability Coverage

The **Company** will pay all sums in excess of those payable under the terms of the **Underlying Protection**, up to the limit of liability identified in the Declarations, that the **Insured** is legally obligated to pay as damages, but only if they are because of **Bodily Injury** or **Property Damage** arising out of the operation or use of an **Automobile**;

  (1) by an **Authorized Driver/User**;

  (2) during the term of a **Rental Agreement**; and

  (3) within the **Policy Territory**.

Who is an **Insured**?

  (a) The **Named Insured** described in Item 3 of the Declarations; and

  (b) The **Authorized Driver** of the **Automobile**.

B. Uninsured/Underinsured Motorists Coverage

If uninsured/underinsured motorists coverage is afforded by **Underlying Protection**, the **Company** will also pay all sums the **Insured** is legally entitled to recover as compensatory damages from the owner or driver of an **Uninsured Motor Vehicle** or **Underinsured Motor Vehicle** in excess of those payable under the terms of **Underlying Protection**. The damages must result from **Bodily Injury** or, if required by the law of the state in which the **Automobile** is principally garaged, **Property Damage**, and they must:

  (a) exceed the amount of the minimum coverage limits required to be provided for such coverage by the law of the state in which the **Automobile** is principally garaged; and

  (b) be sustained by the **Insured** as the result of an accident involving an **Automobile** that takes place during the term of the **Rental Agreement** and within the **Policy Territory**.

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the Uninsured Motor Vehicle or Underinsured Motor Vehicle.

If uninsured/underinsured motorists coverage is not afforded by **Underlying Protection**, this uninsured/underinsured motorists coverage does not apply.

Who is an **Insured**?

The following persons are **Insureds** under this coverage:

  (a) The **Authorized Driver** of the **Automobile**; and

  (b) Any person occupying the **Automobile** with the permission of its **Authorized Driver**.

   D.  The insurance afforded applies separately to each **Insured** by or against whom a claim is made or suit is brought except that the inclusion of more than one **Insured** shall not operate to increase the **Company's** Limit of Liability described in Item 6 of the Declarations.

   E.  No one will be entitled to receive duplicate payments for the same elements of loss under this coverage form and any other coverage form.

   We will not make a duplicate payment under this coverage form for any element of loss for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under workers' compensation, medical payments, disability benefits or similar law.

III. COSTS, CHARGES AND EXPENSES LIABILITY

   A.  When coverage is available to the **Insured** under any **Underlying Protection**, the **Company**, although without obligation to do so, shall have the right and opportunity to associate in the defense and control of any claim or suit reasonably likely to involve the **Company** under this Policy.

   B.  In addition to the Limits of Liability, the **Company** will pay for claims and suits covered under this Policy:

   (1) All expenses the **Company** incurs;

   (2) The cost of bonds to release attachments in any suit the **Company** defends but only for bond amounts within our Limits of Liability;

   (3) All costs taxed against the **Insured** in any suit the **Company** defends; and

   (4) All interest on the full amount of any judgment that accrues after entry of the judgment in any suit the **Company** defends, but the **Company's** duty to pay interest ends when the **Company** has paid, offered to pay or deposited in court the part of the judgment that is within the Limits of Liability.

IV. DEFINITIONS

The following words and phrases have special meaning throughout this Policy:

   A.  "**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or equipment attached thereto) that the **Named Insured** rents pursuant to a **Rental Agreement**, but does not include **Mobile Equipment**.

   B.  "**Authorized Driver**" means only those persons authorized by the terms of a **Rental Agreement** to operate the **Named Insured's Automobile**.

   C.  "**Bodily Injury**" means bodily injury, sickness or disease including death resulting from any of these.

   D.  The "**Company**" means the insurance Company shown on the Declarations who is providing this insurance.

   E.  "**Insured**" means: a person described under the applicable "Who is an Insured" provision of either:

   1. Section I., Insuring Agreement, Excess Liability Coverage; or

   2. Section I., Insuring Agreement, Uninsured/Underinsured Motorists Coverage.

   F.  "**Liability Insurance Supplement**" means the insurance provided by this Policy.

   G.  "**Mobile Equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    (3) by the **Named Insured** and an individual;

    (4) for the individual's rental or lease of the **Named Insured's "Automobile"** for a period not exceeding thirty (30) days.

N. **"Rental Period"** means the period for which an **Automobile** is rented. The first day of the **Rental Period** must occur during the **Policy Period** for this policy to apply.

O. **"Underlying Protection"** means a standard policy of automobile liability insurance or an approved program of self-insurance of substantially similar scope, that meets or exceeds minimum motor vehicle liability requirements for a rental vehicle to which this insurance applies.

P. **"Uninsured Motor Vehicle"** means a land motor vehicle or trailer:

    a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where an **Automobile** is principally garaged;

    b. For which an insuring or bonding company denies coverage or becomes insolvent; or

    c. That is a hit-and-run vehicle and neither the driver nor the owner can be identified. The vehicle must either:

        (1) Hit an **Insured** or the **Automobile** the Insured is occupying; or

        (2) Cause **Bodily Injury** to an **Insured** without hitting an **Insured** or the Automobile the **Insured** is occupying. The facts of the accident must be proved. We may request supporting evidence beyond the testimony of a person making a claim under this or any similar coverage to support the validity of such claim.

However, **Uninsured Motor Vehicle** does not include any vehicle:

    (a) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

    (b) Designed for use mainly off public roads while not on public roads;

    (c) Owned by a governmental unit or agency;

    (d) A vehicle operated on rails or crawler treads;

    (e) Insured under a basic automobile insurance policy issued in accordance with state law; or

    (f) While located for use as a residence or premises.

Q. **"Underinsured Motor Vehicle"** means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of an accident but the limit of liability of which is less than the excess limit of liability under this coverage form.

However, an **Underinsured Motor Vehicle** does not include any vehicle:

    (1) Owned or operated by a self-insurer under any applicable motor vehicle law;

    (2) Owned by any government unit or agency;

    (3) Operated on rails or crawler treads;

    (4) Designed for use mainly off public roads while not on public roads;

    (5) While located for use as a residence or premises; or

    (6) Owned by or furnished or available for the regular use of any Insured.

  2. liability arising out of (a) the ownership, maintenance, operation, use, loading or unloading of any vehicle while being used in any prearranged or organized racing speed or demolition contest or activity or (b) the operation or use of any snowmobile or trailer designed for use therewith.

H. **Bodily Injury** or **Property Damage** arising out of the transportation, storage, handling, distribution, sale, or disposal of asbestos or goods or products containing asbestos.

I. **Bodily Injury** or **Property Damage** arising out of the manufacturing, handling, distribution, sale, application, consumption or use of any products known as polychlorinated biphenyl or which contains polychlorinated biphenyl derivative or which is generally known in the chemical trade as having a like formulation, structure or function by whatever name manufactured, sold or distributed.

J. **Bodily Injury** or **Property Damage**:

  1. With respect to which an Insured under this Policy is also an insured under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, American Nuclear Insurer, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability;

  2. Resulting from the hazardous properties of **Nuclear Material** and with respect to which:

    a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof;

    b. The **Insured** is or, had this Policy not been issued, would be entitled to indemnity from the United States of America, or any agency, thereof, under any agreement entered into the United States of America or any agency, thereof, with any person or organization; or

  3. Resulting from the **hazardous properties** of **Nuclear Material** if

    a. The **Nuclear Material** is at any nuclear facility owned by or on behalf of the Insured or has been discharged or disbursed therefrom;

    b. The **Nuclear Material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    c. The **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America its territories or possessions or Canada, this exclusion 3.c. applies only to **Property Damage** to such **nuclear facility** and any property threat.

As used in this exclusion,

"**Property Damage**" includes all forms of radioactive contamination of property.

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear Material**" means source material, special Nuclear Material or by-product material.

"**Source Material**", "**Special Material**" and "**By-Product Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

C. **APPEALS:** In the event the **Insured** elects not to appeal a judgment in excess of the **Underlying Protection**, the **Company** may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the **Company** exceed the amount set forth in Insuring Agreement for any one Occurrence plus the taxable costs, disbursement and interest incidental to such appeal.

D. **ASSIGNMENT:** Assignment of interest under this Policy shall not bind the **Company** until its consent is endorsed hereon.

E. **ASSISTANCE AND COOPERATION OF THE INSURED:** The **Insured** shall cooperate with the **Company** in the investigation, settlement or defense of any claim or suit.

F. **BANKRUPTCY OR INSOLVENCY:** The insolvency or financial impairment of an **Insured** does not increase the amounts the **Company** would otherwise have had to pay nor does this Policy become excess of any reduced recoveries available because of the insolvency or financial impairment.

G. **CANCELLATION:**

(1) The first **Named Insured** may terminate this Policy by mailing or delivering to the **Company** advance written notice of such termination.

(2) The Company may terminate this Policy by mailing or delivering to the first Named Insured written notice of such termination at least:

    a. 15 days before the effective date of such termination if the **Company** terminates for nonpayment of Premium; or

    b. 90 days before the effective date of such termination if the **Company** terminates for any other reason.

(3) Termination as set forth in sub-paragraph (1) and (2) above shall not affect the right of any person who became an **Insured** prior to effective date of such termination but coverage shall terminate at the end of **the Rental Period**.

(4) The **Company** will mail or deliver their notice to the first **Named Insured's** last mailing address known to them.

(5) Notice of termination will state the effective date of such termination. The **Policy Period** will end on that date.

(6) If notice is mailed by either the **Company** or the first **Named Insured**, such notice shall be sent via certified mail. Proof of mailing will be sufficient proof of notice.

H. **CHANGES:** Notice to or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy nor stop the **Company** from asserting any rights under the terms of this Policy, nor shall the terms of this Policy, nor shall the terms of this Policy be waived or changed except by endorsement issued to form a part of this Policy, signed by an authorized representative of the **Company**.

I. **CONCEALMENT, MISREPRESENTATION OR FRAUD:** This Policy shall be void with respect to any claim where an **Insured** commits fraud, or intentionally conceals or misrepresents any material fact.

J. **DECLARATIONS:** By acceptance of this Policy, the **Insured** agrees that the statements made in the Declarations are its agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between itself and the **Company** or any of its representatives relating to this Insurance.

POLICY NUMBER: CGO G23723463

## POLICYHOLDER NOTICE
## EMERGENCY CONTACT INFORMATION

ACE USA

## NOTICE OF LOSS

Notice shall be given to the Company at the following address:

ACE American Insurance Company
1601 Chestnut Street
P.O. Box 41484
Philadelphia, PA 19101-1484

Actionline number: 1-800-523-9254