IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT JOHNSON, as | ) | |
| Personal Representative | ) | |
| for the Estate of | ) | |
| Irene Johnson, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:07cv1068-MHT |
| | ) | (WO) |
| WILLIE EVA BALDWIN, | ) | |
| | ) | |
|     Defendant. | ) | |

### OPINION AND ORDER

Plaintiff Robert Johnson, personal representative for
the estate of Irena Johnson, brings this suit against
defendant Willie Eva Baldwin for the wrongful death of
his mother Irena Johnson.  The plaintiff asserts that the
defendant, who is his aunt, was negligent, grossly
negligent, and wanton in causing the car accident that
killed his mother.  This court has jurisdiction under 28
U.S.C. § 1332 (diversity of citizenship).

This case is currently before the court on the defendant's motion for summary judgment. For the reasons discussed below, the defendant's motion will be granted with respect to the claims of negligence and gross negligence and denied with respect to the claim of wantonness.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Every year since the mid-1940s, the defendant and her two sisters, Irena Johnson and Ella Prather, traveled together from Pennsylvania to Georgia in order to visit family and friends. The sisters usually made this lengthy trip by car, but in 2007 they decided instead to fly to Atlanta and then rent a car to travel the rest of the way to Cuthbert, Georgia.

The defendant, then aged 90, rented a car at the Atlanta airport, and Johnson helped share the expenses for the rental. Shortly after the defendant drove Johnson and Prather from the airport, the sisters became lost, eventually ending up in Florida. At some point, the sisters found themselves on I-85 near Montgomery, Alabama. At that point, the defendant, apparently realizing where they were headed, did not want to go further into Alabama. She placed the car into reverse and began backing up in the middle of the interstate. The defendant later stated that she thought the car had

3

been on the right shoulder rather than in one of the actual lanes.

The car carrying the sisters was struck by a vehicle driven by Denita Colvin, who was also traveling on I-85.[1] As a result of the collision, Johnson was killed.

## III. DISCUSSION

### A.

Alabama does not allow a passenger injured in a car accident to recover from the driver if the passenger was a "guest" in the driver's vehicle unless the injuries were caused by the driver's willful or wanton misconduct. 1975 Ala. Code § 32-1-2.  In this case, the parties essentially have different understandings of the term "guest."  After examining both Alabama law and the facts material to this case, which are not substantially in

---

1.  Colvin is no longer a defendant in this case. The claims against her were dismissed June 20, 2008, when the parties submitted a pro-tanto stipulation of dismissal.

4

dispute, the court finds that Johnson was a guest in the defendant's vehicle.

The Alabama "guest" statute is meant to distinguish between "paying passengers" and mere "guests." <u>Klaber v. Elliott</u>, 533 So.2d 576, 577 (Ala. 1988). The Alabama Supreme Court has noted that cases involving the guest statute "turn upon whether the ride was purely social or had a business-related purpose." <u>Klaber v. Elliott</u>, 533 So.2d 576, 577 (Ala. 1988). The court has further explained that, when parties share the cost of operating the car on a trip that is social in nature, if "the invitation is not motivated by, or conditioned on, such contribution, [the interaction] is nothing more than the exchange of social amenities and does not transform into a paying passenger one who without the exchange would be a guest." <u>Id</u>. (quoting <u>Wagnon v. Patterson</u>, 70 So.2d 244, 250 (Ala. 1954)).

A fair reading of this language as applied to the annual southern pilgrimage of the three elderly sisters

5

necessitates the conclusion that the ride was purely social in nature.  While Johnson contributed to the cost of the trip, there is absolutely no evidence that the trip was "motivated by" or "conditioned on" this contribution.  The three sisters rented a car at the Atlanta airport in order to share a ride to Cuthbert, Georgia to visit family and friends, a social trip they had made for over 60 years.  A contribution from one sister to another in order to defray some of the costs of the rental car seems classically a "social amenity."  It would indeed be hard to characterize Johnson, who had lived with her sister, the defendant, for approximately 30 years prior to her death, as a "paying passenger" on this annual trip.

The plaintiff, in an attempt to remove himself from the constraints of this rather straightforward analysis, directs the court to <u>Cash v. Caldwell</u>, 603 So.2d 1001 (Ala. 1992), in which the Alabama Supreme Court wrote that, "if [the] carriage tends to promote the mutual

interest of both [the passenger] and [the] driver for their common benefit, thus creating a joint business relationship between the motorist and [her] rider," or if the passenger joins at the "instance" of the driver for the purpose of giving the driver some benefit on a trip that is primarily for the attainment of the driver's objective, then "the rider is a passenger and not a guest." Id. at 1003 (internal quotation and citation removed). The plaintiff seizes upon the terms "mutual interest" and "common benefit," arguing at length that the defendant and Johnson were clearly promoting their mutual interests by sharing a ride and visiting mutual family. The plaintiff seductively cites to a portion of the defendant's deposition in which she admits that the fact that the sisters rented one car benefitted both her and Johnson because otherwise the sisters would have to have rented three cars. Pl's. ex. B (Doc. No. 67), at 105.

7

It appears that under the plaintiff's reading of the Alabama statute, however, almost every imaginable factual context would give rise to driver liability. Indeed, whenever a driver agrees to take on a passenger, and, in turn, a passenger agrees to accompany a driver, there is surely some exchange of mutual interest. Otherwise, the parties would simply not have come together. But <u>Cash</u>, appearing to recognize this, explicitly excludes mutual interests such as "hospitality, goodwill, or the like." <u>Cash</u>, 603 So.2d at 1003. The Alabama court's use of the phrases "mutual interest" and "common benefit" is instead meant to capture something different--for example, something economic, something more than purely social, or something connected to the offer of the ride itself. After all, there is a dichotomy underlying the statute between "guests" and "passengers for hire." This is evidenced by the words that directly follow in <u>Cash</u> the words upon which the plaintiff relies: "thus creating a joint business relationship." In this case, the mere

8

fact that each sister wanted to visit the family--and the logical conclusion that this desire was shared--is simply not the kind of shared mutual interest contemplated by <u>Cash</u>.

Furthermore, whatever the shared interest that existed between the defendant and Johnson, it was not connected to the ride itself in the manner required to remove the arrangement from the scope of the guest statute.   In other words, there is nothing about Johnson's presence on the actual ride or the economic consequences of her addition to the party that gives any indication that the ride itself furthered mutual interests <u>in a manner that motivated the offer of a ride</u>. In fact, the defendant paid the costs for the third sister, Prather, because Prather could not afford to contribute to the costs of the trip.   This undisputed evidence reflects that the defendant's inclusion of Johnson (who had shared a home with her for several

decades) in the trip's plans was not predicated on or conditioned by her sister's agreement to pay.

In Cash, the defendant had asked her brother and his wife to hurry to Birmingham, Alabama to help her take care of her ailing mother.  The car accident while returning from the hospital thus occurred while the Cashes were arguably performing a service for the defendant: coming to a different city in order to help her take care of her mother.  The evidence suggested that they would not have been in the car but for the needs of the defendant.

The plaintiff's reliance on the language of Cash is thus ultimately unpersuasive because the Supreme Court of Alabama has held that "[t]he benefit conferred must in some degree have induced the driver to extend the offer to the rider."  Sullivan v. Davis, 83 So.2d 434, 437 (Ala. 1955).  In Cash, there was evidence that permitted a jury to conclude that the ride to the hospital was motivated by the defendant's need for the services of the

10

plaintiff.  The undisputed factual context of this case simply does not permit the conclusion that any benefit provided by Johnson was central to the decision to include her in the vehicle.

Because the court concludes that Johnson was a guest, and because Alabama law limits recovery by guests unless the driver was willful or wanton, summary judgment will be granted in the plaintiff's negligence and gross negligence claims.  The court must now turn to the plaintiff's claim of wantonness.


B.

Alabama courts define wantonness to require conscious behavior with the knowledge that the likely or probable result will be injury to another person.  See, e.g., Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala. 1998); Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994).  This is a high standard of culpability.  The Alabama Supreme Court has explained

11

that, "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." Tolbert v. Tolbert, 903 So.2d 103, 114 (Ala. 2004) (quotation marks and citations omitted).

Alabama courts will allow a jury to determine whether conduct was wanton if there is evidence that would allow that determination.  Cash v.Caldwell, 603 So.2d 1001, 1003 (Ala. 1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness."). Importantly, the determination of consciousness that underlies the question of wantonness can rely on inferences drawn from the circumstances.  Klaber v. Elliott, 533 So. 2d 576, 579 (Ala. 1988).

The defendant argues that she is entitled to summary judgment on the wantonness claim because she did not consciously drive in reverse in the middle of the

interstate.  She claims instead that she thought she was driving in reverse on the shoulder of the road.  The plaintiff argues that the evidence is in dispute as to whether the defendant thought she was driving in reverse on the actual highway.[2]

Ironically, both parties seize on the portion of the defendant's deposition in which she admits that to back up in a highway lane would be "worse than dangerous" because it would "kill everybody in that front car."  Pl's. ex.  B, Doc. No. 67, at 88.  The defendant uses this to argue that her knowledge of the inherent danger in this course of action surely is conclusive evidence that she thought, as she testified in her deposition, that she was actually on the road's right shoulder.  The

_____

2.  Although the plaintiff's brief is extremely unclear on the issue, it also appears that he argues that, because backing in reverse even on a shoulder is a violation of Alabama Code, the defendant's conduct was clearly wanton.  This undeveloped argument, if indeed that is what the plaintiff is suggesting, cannot prevail.  Violation of a code provision meant to regulate vehicle safety falls classically within the province of per se negligence; indeed, it does not by itself speak at all to the mental state required by wantonness.

13

plaintiff uses this testimony, instead, to argue that if the evidence could show that the defendant knew she was in a highway lane, she was certainly conscious of the danger associated with that conduct.

The evidence with respect to the defendant's mental state is anything but clear.  The deposition testimony is, at best, confusing and contradictory.  Moreover, the questions posed to the defendant by the plaintiff's counsel focus entirely on what she thought about the accident at the time of deposition and not on what she was consciously aware of at the time she made her decision to drive in reverse.  Nonetheless, evidence of what the defendant thought at a later date about where on the road she was traveling is at least circumstantial evidence of what she thought at the time of the accident, even if her newer beliefs were informed by subsequently hearing the accounts of other witnesses.  The defendant's testimony indicates that she may still disagree with some witness accounts, suggesting that her own memory of the

14

events is, in certain respects, unchanged from what she believed at the time of the accident. Thus, the plaintiff is correct to seize on some inconsistencies between the defendant's argument that she merely traveled on the shoulder of the road and her drawings on pictures of the accident scene which indicate that she thinks that she was traveling in one of the road's lanes. This inconsistency, <u>combined with the fact that the evidence reflects that she was actually traveling in a real lane</u>, makes it possible for a jury to find that she thought she was traveling in a real lane. If she knew where she was driving, a jury could certainly determine, particularly given her later comments, that she knew it to be incredibly dangerous and likely to result in injury.

The defendant argues, however, that Alabama courts apply a rebuttable presumption that prohibits the court from drawing these inferences related to her consciousness of danger. In <u>Ex Parte Essary</u>, ___ So.2d _____, 2007 WL 3238879 (Ala. 2007), the Supreme Court of

Alabama held that it will ordinarily not impute wanton conduct when the conduct is as dangerous to the actor as it is to her potential victims.  Thus, <u>Essary</u> refused to allow a jury to decide wantonness when a driver drove through a stop sign in an effort to pass between two oncoming cars because, "[a]bsent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior."  <u>Id</u>. at ____, 2007 WL 3238879, *6.

This rebuttable presumption makes at least some sense both as a general matter--given the general human instinct for self-preservation--and in this case.  It is difficult to believe that the defendant would have consciously placed her and her two sisters in serious danger.  Nonetheless, <u>Essary</u> left open two exceptions to this general presumption.

First, <u>Essary</u> acknowledged that the presumption only applied when the actor was "possessed of [her] normal

faculties." <u>Id</u>. If there is evidence of "impaired judgment," a person may be "indifferent to the risk of injury to [herself]." <u>Id.</u> The defendant, 90-years old at the time of the accident, has displayed considerable confusion in her deposition testimony and has been diagnosed with dementia. The court is not required to decide whether, under Alabama law, this is evidence of "impaired judgment" at the time of the accident sufficient to rebut the presumption. Instead, the court applies <u>Essary</u>'s second exception, which includes conduct that is "so inherently reckless" as to indicate the kind of "depravity" from which the court could impute a disregard for the normal instincts of self-preservation. <u>Id</u>. Driving backwards on a high-speed, interstate highway like I-85 is certainly conduct of the highest degree of recklessness. It would be difficult to imagine conduct more suggestive of wantonness. One engaging in that behavior knowingly would certainly display the kind of disregard for self-preservation that would rebut the

17

usual presumption against that kind of mental state. Because this exception recognized in <u>Essary</u> applies here, the court cannot say with certainty that a jury could not determine that the defendant was wanton.


***


For the foregoing reasons, it is ORDERED that defendant Willie Eva Baldwin's motion for summary judgment (Doc. No. 52) is granted with respect to plaintiff Robert Johnson's claims of negligence and gross negligence and denied with respect to his claim of wantonness.

DONE, this the 3rd day of November, 2008.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE